[Civ. No. 824.   Third Appellate District.—June 13, 1911.]

ELIZABETH KAUFMAN, Respondent, v. ALL PERSONS, etc., Defendants; JOHN CROSBY YOUNG and JOSEPHINE YOUNG, Appellants.

CONTRACT TO SELL LAND—EXERCISE OF OPTION TO PURCHASE—DEED IN ESCROW OBTAINED BY PAYMENT—PAYMENTS ON SECURED DEBT—PREVENTION NOT PRECLUDING PURCHASE.—Where an agreement to sell land provided for an option to purchase, and that the sum paid thereon was to be credited on purchase money, and that upon payment of the amount due from the vendor to a national bank, at which a deed in escrow was placed, it should be delivered to plaintiff, and that the residue of the purchase price was to be paid in monthly installments, under a deed of trust from the vendor to a savings and loan society, until the debt thereto should be fully paid, it is held that the evidence clearly shows that the option was exercised, that the deed in escrow was obtained by payment, and that the residue of the purchase money would have been fully paid, except as prevented by a clandestine payment of the residue by the vendor, which could not impair the legal rights of the purchaser.

ID.—INSURANCE PAYABLE TO SAVINGS AND LOAN SOCIETY—LOSS OF IMPROVEMENTS BY FIRE—PROPER CREDIT ON PAYMENTS ASSUMED BY PURCHASER.—Where the vendor had been required by the savings and loan society to have the improvements insured for its benefit, and to make any loss payable thereto, and the purchaser had been expressly required to assume the whole indebtedness payable thereto,

and the property having been expressly bought subject to the deed of trust to that society, the purchaser was entitled, in case of loss by fire, to have the proceeds of the policy credited on the payments assumed by her.

ID.—ASSIGNMENT OF POLICY FROM VENDOR NOT REQUIRED—ABSENCE OF POWER OF VENDOR.—The vendor had no power to assign the policy; and therefore no assignment of the policy from the vendor to the vendee was required.

ID.—VENDEE EQUITABLE OWNER OF INSURED PROPERTY.—A vendee, under a contract of sale, in possession, has the equitable title to the property, and with such title necessarily acquires an equitable interest in any insurance policy on the premises agreed to be conveyed, subject only to defeat of the equitable title by nonperformance of conditions.

ID.—CLANDESTINE PAYMENT OF RESIDUE BY VENDOR AFTER LOSS BY FIRE—TENDER BY VENDEE—REFUSAL—REMEDY NOT ALLOWABLE.— Where the vendor made a clandestine payment of the residue due to the savings and loan society, after the loss by fire, and refused a tender of such payment, and inequitably required further payment of the amount of the policy, it appearing that such payment was voluntarily made, without requirement under the terms of payment, the vendor is not entitled in equity to enforce a vendor's lien for the amount of such payment, and will be afforded no legal remedy in this action, after deliberately refusing the friendly tender made him before suit.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Norman H. Hurd, for Appellants.

E. E. Hull, and Guy V. Shoup, for Respondent.

HART, J.—This is an appeal by the defendants, Young, from the judgment and the order denying them a new trial.

The action was brought in the month of February, 1908, under the provisions of the act of June 16, 1906, popularly known as the "McEnerney Act," for the purpose of establishing plaintiff's title to certain real estate situated in the city of San Francisco and to determine the status of all adverse claims to said property.

The defendant, John C. Young, claimed some interest in said real estate, and he was, therefore, served with summons and a copy of the complaint. Said Young, joined by his wife, Josephine M. Young, answered the complaint, and therein, after asking that they be adjudged to be the owners in fee or at least to have some interest in the property described in plaintiff's pleading, prayed that "in the event that said court shall not adjudge and declare said John Crosby Young to be the owner of said property and of said moneys aforesaid, by reason of said default and forfeiture, then and in that case that said defendants, John Crosby Young and Josephine M. Young, be adjudged and decreed . . . to be entitled to a vendor's lien covering all said property for the entire balance of the purchase price of said property."

We have carefully examined the evidence as presented by defendant's statement on motion for a new trial, which is a part of the record on this appeal, and have found the statement of the facts, as set forth in respondent's brief of the several transactions out of which this controversy has risen to be full and accurate, and we shall, therefore, adopt the greater part of such statement as the recital of said facts in this opinion.

The defendant, John C. Young, was, on the first day of February, 1904, the owner of the property in dispute, and on that day, in conjunction with his wife, made and executed to the Savings and Loan Society, a corporation, a promissory note in the sum of $4,000. "This note provided for the payment of the indebtedness evidenced by it in monthly installments of $20 and accrued interest, until the first day of February, 1906, at which time the full amount of the principal should become due and payable. The note further provided that at any time during a default in the payment of any sum to be paid under the note, the entire balance of the indebtedness evidenced by said note should, 'at the option of the holder of this note, but not otherwise, become immediately due and payable.'

"The entire unpaid balance of this indebtedness was not paid on the date mentioned in the note at the time at which it was due, but the monthly payments of $20 and accrued interest were thereafter continued, with the consent of the Savings and Loan Society.

"For the purpose of securing the payment of the indebtedness evidenced by this promissory note, defendants Young executed to certain trustees, for the benefit of the Savings and Loan Society, a deed of trust, conveying to said trustees the real property described in the complaint. One of the conditions of this deed of trust was that the buildings located upon the property should be kept insured in a company to be designated by the Savings and Loan Society, in the sum of $3,000, 'loss, if any, to be made payable to said Savings and Loan Society.'

"Pursuant to this agreement contained in the deed of trust, the policy of insurance introduced in evidence; and set out upon pages 89 et seq. of the transcript, was procured. This policy of insurance contained the following clause: 'Loss, if any, payable to Savings and Loan Society.'

"For some time prior to January 16, 1906, plaintiff had occupied the premises in suit as the tenant of defendant Young, maintaining there 'a home for unfortunate girls and their babies,' known as the 'Peniel Home of Peace.'

"This was the condition of the title to the property in suit up to the last-mentioned date, at which time the agreement with plaintiff hereinafter referred to was executed by defendant Young.

"On January 16, 1906, plaintiff and defendant John Crosby Young entered into an agreement for the sale of the property to plaintiff, by the terms of which plaintiff paid to said John Crosby Young the sum of $1,000 for an option to purchase the property in suit, this $1,000 to constitute a part of the purchase price of the property if plaintiff exercised her option to purchase. The remaining $5,000 of the purchase price was to be paid as follows: $1,476.52 to be paid to the Crocker-Woolworth National Bank for defendant Young in three payments, the first of which was payable 'on or before' the first day of January following the date of the contract, and the two remaining installments were to be paid 'on or before' later dates. The balance of the purchase price, amounting to $3,523.48, was 'to be paid to the Savings and Loan Society of San Francisco . . . at the rate of $20 per month and interest, according to the terms of' the deed of trust hereinbefore referred to.

"The agreement further provided that 'a good and sufficient deed of said premises . . . subject to said deed of trust,' bearing same date as the agreement, should be at once executed by defendant Young and placed in escrow with the Crocker-Woolworth National Bank, to be delivered to plaintiff upon payment by her of the $1,472.52 and interest which was to be paid to said defendant through this bank.

"The agreement provided that plaintiff should have until the first payment to be made to the Crocker-Woolworth National Bank was due in which to exercise her option, and it also provided that in the exercise of her option she must pay the $20 per month and interest to the Savings and Loan Society 'according to the terms of' the deed of trust. As hereinbefore shown, the balance of the mortgage debt secured by the deed of trust was due within fifteen days after the option agreement was entered into, but the Savings and Loan Society consented to a continuance of the monthly payments thereunder, and did not demand payment in any other way.

"Early in February, 1906, plaintiff made her first payment to the Savings and Loan Society under the terms of her option agreement, and thereafter continued to make her monthly payment of $20 and accrued interest to the Savings and Loan Society upon the mortgage debt, until prevented from doing so by the refusal of the Savings and Loan Society to receive further payments from her, under the claim that the mortgage debt had been satisfied.

"Prior to the date of the option agreement, and while plaintiff was occupying the premises in suit as tenant of defendant Young, she paid her rent of $40 per month to the Savings and Loan Society for account of her landlord, and the receipts given to her for such rent ran to her landlord, but after the execution of the agreement plaintiff was recognized by the Savings and Loan Society as the principal debtor under the mortgage debt, and the receipts were made to her direct, without mention of her former landlord's name in the transaction.

"In the agreement for an option no rent was reserved, nor was any mention made of payment of rent in any form. The only payments mentioned in the agreement were payments to be made upon the purchase price of the property.

"During the great San Francisco conflagration of April, 1906, the improvements upon the premises in suit were destroyed by fire, and thereafter the insurance effected under the terms of the deed of trust hereinbefore referred to was collected by the Savings and Loan Society and applied upon the mortgage debt. In the collection of this insurance the Savings and Loan Society further recognized plaintiff as the principal debtor under the mortgage debt, by charging her with the attorney's fee expended in collecting the insurance, and by writing to her to call upon them in reference to her insurance.

"After applying the insurance money collected, there remained due to the Savings and Loan Society upon the mortgage debt the sum of $1,110. This sum, without the knowledge or consent of plaintiff, defendant John Crosby Young paid to the Savings and Loan Society on September 29, 1906, and took to himself a reconveyance of the title conveyed by the deed of trust. This reconveyance was never recorded. About one month after the date of this reconveyance, plaintiff paid to the Crocker-Woolworth National Bank the full amount which she was to pay that bank for defendant John C. Young under the terms of the escrow agreement, and received from the bank the deed of defendants which had been placed there in escrow at the time of the execution of the option agreement. This deed was then duly recorded. No part of this sum paid to the Crocker-Woolworth Bank was due at the time of such payment, but, by the terms of the agreement, it might be paid 'on or before' the dates mentioned in the agreement as the times it was due and payable.

"Each month, for several months subsequent to the time the Savings and Loan Society delivered the 'reconveyance' to defendant Young, plaintiff made tenders to the Savings and Loan Society and to defendant John C. Young, of the actual amount due each month after deducting the amount of insurance money collected by the Savings and Loan Society from the amount of the mortgage debt. These tenders were made both in writing and by tendering the actual amount due in money. The amount tendered each month included the amount previously tendered, which had been refused. The Savings and Loan Society refused to accept these tenders, basing its refusal upon the ground that the mortgage debt had been fully

paid, and defendant Young refused to accept the tenders, basing his refusal upon the ground that plaintiff was not entitled to credit for the amount of the insurance money which had been applied upon the mortgage debt by the Savings and Loan Society, and therefore, the amounts which she tendered were not enough. He was willing to accept any money which she was willing to pay to him, but refused to give a receipt for the same. After the tender of January 2, 1907, which tender included the amount due at that time, together with all previous amounts which she had tendered and which had been refused, plaintiff desisted from making further tenders until April 9, 1907, at which time she tendered, in writing, the full amount of the balance of the mortgage debt which remained after application of the insurance money. Acceptance of this tender was refused.

"On May 9, 1907, the trustees named in the deed of trust executed and delivered to plaintiff a satisfaction of the mortgage debt and a quitclaim to any title which they had in the property, On May 24, 1907, this satisfaction and quitclaim was duly recorded in the office of the county recorder of the city and county of San Francisco, and thereupon plaintiff's record title to the property became clear of the mortgage lien."

Upon the foregoing statement of the facts, as established by the evidence, the main contentions urged by the appellants are: 1. That the plaintiff never exercised her right to purchase the property in question under the agreement of option between her and the defendant, John C. Young; 2. That the money due and paid as and for insurance on the building on the land did not and could not inure to her benefit, since the policy of insurance was not transferred or assigned to her by said Young; 3. That defendants are entitled to have a lien declared in the judgment upon the property in dispute as indemnity for the said sum of $1,110, which, as seen, they paid, under the circumstances as recited in the above statement of the facts, to the Savings and Loan Society.

There are, also, some assignments of error involving the rulings of the court in allowing to be answered certain questions propounded by counsel for plaintiff.

1. The evidence very clearly discloses, in our opinion, that plaintiff exercised her right of option to purchase the property described in the complaint.

As we have seen, the plaintiff occupied the premises as a tenant of defendant, John C. Young, for a number of months prior to the date of the execution of the agreement of option. She paid the rent, by the express instructions of said Young, to the Savings and Loan Society, to which he was indebted in the sum of $4,000, the rent so paid being credited on the note evidencing said indebtedness. On the sixteenth day of January, 1906, the agreement of option was executed, said agreement containing the covenants heretofore mentioned. At the time of the execution of said agreement and as the consideration for its support, the plaintiff paid to the defendant, John C. Young, the sum of $1,000. On the same day, the defendants, in consideration of the sum of $15, executed the deed in escrow, conveying to plaintiff the property in dispute, subject to the deed of trust of said property previously executed by defendants to the Savings and Loan Society. This deed, with a letter of instruction, dated January 18, 1906, was delivered to the Crocker-Woolworth National Bank, to be held in escrow by said bank and delivered to the grantee upon the performance of the conditions set out in said letter of instruction.

The agreement of option provided that, in the event plaintiff accepted the same or elected to exercise her right thereunder to purchase the property, she should pay to the Savings and Loan Society the balance of the indebtedness due it from the defendants ($3,523.48) in monthly installments of $20, together with the interest accruing on the unpaid balance of the principal sum. These payments, it is now claimed by defendants, merely constituted payments of the rent for the premises, but it was admitted by John C. Young that the plaintiff paid no rent after the agreement of option was executed, but that the payments to said society were made "under this agreement," referring to the said written option. Besides, while the receipts for rent paid to said society were always made out in the name of John C. Young, the payments by plaintiff to said society, after the execution of the deed in escrow, were receipted for in writing in plaintiff's name, thus showing that both John C. Young and the Savings and Loan Society recognized the transaction then subsisting between plaintiffs and defendants to be a contract of sale and not a mere option. Obviously there is nothing in the fact that plaintiff did not make a payment to the Crocker-Wool-

worth National Bank until after the defendant, John C. Young, had taken up the note held by the Savings and Loan Society, which militates in the slightest measure against the proposition that she exercised her right to buy the property within the time within which, under the terms of the agreement, she was at liberty to exercise that right. The agreement, it will be borne in mind, gave her the right to pay the installments to be paid at said bank "on or *before*" the dates on which such installments were, respectively, to be paid, and when she paid the full amount which she was required to pay at the bank, including, of course, all the installments, before the date on which the first installment became due, she thus acted clearly within her right under the option agreement. The defendants had no legal right to prevent her from so paying the money to be paid as the condition on which the bank was to deliver to her the deed in escrow, nor to refuse to accept said money at the time it was paid, and the act of defendants in paying the note to the savings society, under the circumstances, could not have the effect of impairing her rights under the agreement of option in the least. She paid an enormous sum ($1,000) for the mere right to accept or reject the offer by defendant to sell the property to her, and we cannot conceive how, under the circumstances, a court of equity could be expected to sustain the defendants in the claim, if, indeed, they seriously make it here, that, because of an unnecessary act of their own, and unbeknown to plaintiff and evidently prompted by some reason which, though not made clearly to appear, we feel free to conjecture is not in harmony with the principles of equity, the plaintiff forfeited her right to purchase the property in dispute. The moment she paid the money to the bank she thus exercised her right to purchase the property, and, as stated, no prior act or acts of the defendant, particularly any act done clandestinely, so far as she was concerned, could affect her right to buy the property in any degree whatsoever.

But even if the evidence to which we have particularly referred still leaves shrouded in some doubt whether the transaction, as finally consummated, involved a contract of sale, the admissions of defendant, J. C. Young, and his counsel, will readily dispel such doubt.

In one of his letters to Miss Kaufman, J. C. Young not only called her attention to payments that were due on the purchase price, but referred to her default in the payment of a certain installment to the savings society, saying, among other things, that he would excuse said default, but would expect a prompt payment on a certain near day in the future. Furthermore, counsel for appellants, in the concluding paragraph of his opening brief, uses the following language: "In closing, appellants desire to say only this: that the evidence is *undisputed* that plaintiff *purchased* the property for the sum of $6,000," etc.

As declared in the outset of this discussion, there can be no doubt that, from the entire evidence, of which we have presented herein a comprehensive synopsis, the court was justified in concluding (there are no findings) that plaintiff accepted and exercised the right given her by the agreement of option to buy the property, and that the contract thus evolved from the original transaction is one that could have been specifically enforced at the suit of either party.

2. We know of no just principle by which appellants can sustain their contention that the money due from and paid by the insurance company upon the policy underwritten on the building on the premises involved in this controversy should inure wholly to their benefit and not to that of plaintiff. Said building, it will be recalled, was destroyed by fire after the plaintiff and defendants had entered into the contract of option, and subsequently to the execution and delivery to the Crocker-Woolworth Bank of the deed in escrow. The argument advanced in support of this proposition is that, the policy not having been transferred or assigned to the plaintiff, the money due thereunder, upon the destruction of the building, cannot be claimed by her, but was the property of the defendants. In order to vest her with any interest in or right to said money, or to have it credited for her benefit on the note held by the savings society, so the argument goes, the policy must necessarily have previously been assigned to her by the defendants.

It may first be said, in reply to this proposition, that the defendants having, previously to the fire, assigned the policy of insurance to the Savings and Loan Society as additional (to the deed of trust) security for the loan by said society

to defendants, were without any legal power to assign said policy to plaintiff.

The habendum clause of the deed in escrow, it will be remembered, reads: "To have and to hold, all and singular, the said premises, together with the appurtenances, unto the said party of the second part, her heirs and assigns forever, *subject to a certain deed of trust* from John Crosby Young and Josephine M. Young to Arthur A. Smith and Wm. B. Dunning, trustees Savings and Loan Society, dated Feb'y. 1, 1904."

Said clause in said deed and the agreement of option must be construed together, and, so construing them, it is idle to argue that the intention and understanding of the parties was not that plaintiff was to assume and that she did not, by virtue of such understanding, assume the extinguishment of the obligation of the defendants to the Savings and Loan Society. The agreement of option specifically points out all the payments, by installments, including the payment of the note held by the savings society, that were required to be made by plaintiff until the full purchase price should have been paid. The clause quoted from the deed in escrow, viewed by the light of said option, simply and plainly means that the plaintiff bought the property from the defendants subject to the right of the Savings and Loan Society to enforce the collection of its note executed to it by the defendants by the sale of the property, if necessary, and, if the insured portion of the property was destroyed by fire before the payment of the note, by the application of the money derived from the insurance company on said policy to the indebtedness. There must be, of course, some competent evidence clearly showing that plaintiff assumed the indebtedness of defendants to the savings society, and it may be that, had the contract of sale been evidenced only by the deed in escrow, no other writing as to the terms of the sale having been made by the parties, the mere language of the clause of said deed "subject to a certain deed of trust," etc., might be held to be insufficient to bind the plaintiff to the payment of the debt secured by the deed of trust. But such is not the case here. As seen, the writings constituting the transaction by which the sale of the property was consummated very clearly and unequivocally show that the plaintiff, as a part of the consideration

or purchase price, assumed the indebtedness of defendants to the savings society.

By the agreement of sale, plaintiff acquired an equitable title to the property and with such title she necessarily acquired an equitable interest in the insurance policy—that is to say, the policy having been assigned or made payable to the savings society as security for the obligation which she had agreed to assume and extinguish, she, upon purchasing the property, thus acquired the right to have the money derived from said policy, in case of the destruction by fire of the building upon which it was underwritten, applied, for her benefit, upon the obligation so assumed. The rule as thus stated is expressly recognized by the very case cited by appellants (*Gilbert* v. *Port,* 28 Ohio St. 296 et seq.), wherein the following statement of the rule by Sugden on Vendors, eighth American edition, 291, chapter 7, section 2, is approved: "A vendee, *being the equitable owner of the estate from the time of the contract of sale,* must pay .the consideration for it, although the estate itself be destroyed *between the agreement and the conveyance; and, on the other hand, he will be entitled to any benefit which may accrue to the estate in the interim,* although this was not always the rule. But, now, if *after* the contract, and *before* the conveyance, the houses were burned down, *the loss will fall upon the purchaser,* although the houses were insured at the time of the agreement for sale, and the vendor permitted the insurance to expire without giving the notice to the vendee." And the Ohio court, in the case mentioned, concludes, from all the authorities and upon principle, that "the vendee, because he is the equitable owner, and, as such, is compelled to sustain the loss, occurring *after* the *sale* and *before* the *conveyance,* is entitled to any benefit that may accrue to the estate."

We are not unmindful of the cases that hold that, where property, upon which insurance has been placed to indemnify the owner or other interested person against loss by fire, has been transferred by the owner to another party, and the policy of insurance has not been assigned by the grantor or person for whose sole indemnity it has been issued, to the grantee, or has been assigned to the latter without the consent of the insurer, in violation of a covenant in the contract against the assignment thereof without the permission or

assent of the insurer, such policy is void and, in case of loss, cannot be enforced against the insurance company. The principle underlying those decisions is, obviously, that a contract of insurance is a personal one between the insurer and the insured, or, as it is stated in *Wilson* v. *Hill,* 44 Mass. (3 Met.) 68, cited here by appellants, "an insurance of buildings against loss by fire, although in popular language it may be called an insurance of an estate, is in effect a contract of indemnity, with an owner, or other person having an interest in the preservation of the buildings, as mortgagee, tenant, or otherwise, to indemnify him against any loss which he may sustain, in case they are destroyed or damaged by fire." But, manifestly, this case does not come within that class of cases. The policy here, as has been seen, was by its own terms, and under the agreement between said society and the defendants, made payable, in case of the destruction of the building by fire, to the savings society, for the sole purpose of extinguishing or reducing a debt which the plaintiff, under her agreement with defendants and with the knowledge and consent of the creditor, had assumed and agreed to pay. She was, as declared, the equitable owner of the property and in possession thereof, Had the building, uninsured, or insured and the policy assigned neither to her nor to one acting, in effect, so far as the policy was concerned, as her trustee, or assigned without the consent of the insurer, been destroyed by fire, the loss, as is true under the present circumstances, would have fallen on her, and the defendants could have specifically enforced the contract of sale just as they could have done had the building not been destroyed. In brief, it was her property until her equitable title was defeated by the nonperformance of the conditions upon which she pur-. chased it.

3. We think the court was right in disallowing defendants a vendor's lien on the property concerned here to secure the payment of the $1,110, which was the balance due the savings society on the purchase price and which the defendant, John C. Young, paid to the savings society after the collection of the money on the insurance policy. The claim of defendant is based on section 3046 of the Civil Code, which provides that "one who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as re-

mains unpaid and unsecured otherwise than by the personal obligation of the buyer.''

The evidence discloses that the payment by the defendant, John C. Young, of the balance due the Savings and Loan Society after the money derived from the insurance policy had been received by said society and credited on the note held by it against the defendants was purely the voluntary act of said John C. Young. There is no evidence which shows or even tends to show that the savings society had made a demand either on the plaintiff or the defendants for the payment of said balance. Indeed, the defendant, John C. Young, himself testified that the savings society had made no call for a settlement of the balance remaining unpaid on said .note. The mortgage (trust deed), having. been given to secure the payment on a sum largely in excess of the balance due on the note (the note was then past due), was, presumably, sufficient to secure the payment of such balance, and, while we are not to be understood as holding that the defendants had no legal right to redeem the property, the note having passed the date of its maturity (Civ. Code, sec. 2903), nor as holding that the savings society could not have demanded its payment at and before the time it was fully paid by defendants, assuming that the time for its payment had not been extended by the agreement of the society, still it is plainly manifest, from the evidence, that there was no actual necessity for the payment of the unpaid balance of said note at the time said balance was paid by the defendants. But as a matter of fact, it appears that the savings society had agreed to allow the note to remain in their hands and the payments thereon to be made according to the terms and conditions of the original agreement. There is, however, no showing by the pleadings—either the complaint or the answer—that a deficiency judgment might or would probably follow a sale of the property to satisfy the note (*Lake* v. *Tebbets,* 56 Cal. 481), and all that the defendant accomplished by the payment of the balance remaining unpaid on the note was to remove a lien amply sufficient to secure its payment. We have little doubt that the motive which inspired the defendant, John C. Young, to take up the note, after the insurance money had been credited thereon and the debt evidenced thereby greatly reduced, was a belief entertained by him that such action on his part might, by

16 Cal. App.—26

some nicely drawn refinement, have the effect of strengthening his position that the insurance policy would be made to inure solely to his benefit. But, whatever the motive, having by their own voluntary and unnecessary act brought about the untoward situation in which they now find themselves as to the balance due on said note, the defendants ought not, in our opinion, to be aided by a court of equity in relieving them of such situation or be permitted to avail themselves of the provisions of section 3046 of the Civil Code. But, without deciding whether, under such circumstances, said section of the Civil Code is applicable, we think defendants were properly and justly disallowed a vendor's lien by the court because of their unqualified refusal to accept, after they had taken up the note held by the savings society, the tender and offer by plaintiff to pay the installments, and, finally, to make a full and complete settlement with defendants of the amount due on the whole transaction after deducting the sum represented by the money received on the insurance policy and credited on said note.

The defendant, John C. Young, admitted that the plaintiff offered to pay to him the installments that came due on said note after he had taken it up, and that, at last, she offered to pay and tendered to him the full sum of $1,110 which he had paid to extinguish the obligation arising thereunder to the savings society. As stated, he refused these tenders and, we think, ought to be held to have thereby waived any right, if any he might otherwise have had or could have claimed to a vendor's lien. "While a valid tender of the amount of a debt and a refusal of the money by the creditor do not have the effect of discharging the indebtedness, it is well settled that the tender is equivalent to payment as to all things which are incidental and accessorial to the debt. The creditor by refusing to accept does not forfeit his right to the thing tendered, but he does lose all collateral benefits and securities." (28 Am. & Eng. Ency. of Law, p. 12, and cases cited in the footnote thereof; *Tiffany* v. *St. John,* 65 N. Y. 314, [22 Am. Rep. 612].)

If it may transpire, although we have no occasion to so declare here, that the defendants have lost any legal remedy to which they might have resorted for the recovery of any just claim they may have against plaintiff, by reason of the

payment by them of the balance remaining unpaid on the note which she promised to pay, the fault lies with defendants themselves. They forfeited their chance or opportunity to be reimbursed for said payment by their refusal to accept reimbursement tendered to them by plaintiff before this action was instituted. Neither law nor equity can have much, if any, patience with a litigant, appealing for the assistance of either, who has deliberately refused an amicable tender of the right to which he subsequently asks the courts to restore him; and particularly should this view prevail where the refusal was, as was evidently the fact in the case at bar, prompted by no other motive than to secure more, manifestly, than was justly, equitably and in good conscience such litigant's due.

4. We find nothing in the court's rulings admitting certain evidence, to which exceptions were taken at the trial and of which complaint is made here, which could have prejudiced the rights of the defendants in any degree, even if it may be assumed that some of them were not, strictly viewing them, correct.

We think the judgment and order should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.