Frank Brownell, Plaintiff, *v.* The Board of Education of the Inside Tax District of the City of Saratoga Springs, Defendant.

Supreme Court, Washington Special Term, April 18, 1924.

**Vendor and purchaser — contract to convey lands with buildings thereon — buildings insured by vendor — destruction of buildings by fire before delivery of possession — purchaser entitled to specific performance by conveyance of land and application of insurance money on purchase price — vendor after execution of contract was trustee for purchaser.**

The purchaser of land with the buildings thereon upon the destruction of the buildings by fire before delivery of possession is entitled to specific performance by conveyance of the title to the land and by application of the insurance moneys on the purchase price, where it appears that the contract provided that the premises were to be delivered "in as good condition as they now are natural wear excepted;" that the contract was silent as to insurance; that the vendor held insurance in considerable amounts payable to itself in the event of loss and no change in the form of the insurance was made; and that the purchaser did not secure other insurance.

The vendor after the execution of the contract became a trustee of the property, including both the land and the buildings, for the purchaser, and when the fire occurred the insurance money took the place of the buildings and constituted a trust fund held by the vendor in the same trust capacity.

Motion by plaintiff for judgment on the pleadings, and by defendant to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Lawrence B. McKelvey*, for the plaintiff.

*Sheridan P. Wait*, for the defendant.

Angell, J. Upon facts set forth in the complaint and admitted in the answer, the parties ask for a declaratory judgment under section 473 of the Civil Practice Act determining their rights.

It appears that for some time prior to September 10, 1923, defendant board of education owned and was in possession of premises on Lake avenue in the city of Saratoga Springs on which were situated a high school building and two other small structures of comparatively little value. The building had become unsuitable

or inadequate for use as a high school, and before the date specified defendant had purchased other property and was erecting thereon a new high school building. On September 10, 1923, plaintiff and defendant entered into a written contract whereby plaintiff agreed to purchase and defendant to sell the Lake avenue premises for $30,000, of which $3,000 was paid upon the execution of the contract. The balance was to be paid upon the completion of the new high school building, estimated to be about September 1, 1924, at which time a deed to the Lake avenue property and possession thereof were to be given to plaintiff. The contract provided that the premises were to be delivered " in as good condition as they now are natural wear excepted;" that defendant was to pay taxes and assessments during the period of its occupancy and until the delivery of the deed; and that in case either party failed to perform, the party so failing should pay to the other the sum of $3,000, which was agreed upon as liquidated damages for such failure. The contract was silent as to insurance. However, at the time of the contract and for· a considerable period prior thereto defendant carried insurance on the premises and the contents thereof in substantial amounts; including $28,000 upon the high school building. This insurance was payable to defendant in the event of loss. No change in the form of the insurance was made at any time. It was continued after the contract was executed. Plaintiff did not secure other insurance. On October 26, 1923, while the premises were still in defendant's exclusive possession, a fire occurred without fault of either party which totally destroyed the roofs and interior of the high school building and practically destroyed its outer walls. Defendant by reason thereof was compelled to vacate the building, and no repairs have been made upon it. The building was considered by defendant and the insurance companies as a total loss, and defendant has received from the insurers and still retains the full sum of $28,000 insurance carried thereon. This is exclusive of other amounts of insurance received by it for loss on the building's contents.

On this state of facts plaintiff asks that the contract of September 10, 1923, be specifically performed by defendant, by a conveyance of the title to the real estate and by application of the insurance money upon the purchase price. Defendant declines to do this, but offers to return to plaintiff the $3,000, with interest paid by him upon the execution of the contract.

In view of these facts, what are the rights of the parties? Plaintiff contends that the insurance· money is impressed with a trust in his favor because of the loss of the building; that defendant

holds that money in trust for him — in effect that it represents, and stands in place of, the destroyed building. He asserts that as he bought the property under a valid contract, he is entitled to it — the land, and the insurance money which takes the place of the building that is gone.

Defendant's reason for refusing to carry out the agreement is that it is no longer possible for it to perform the contract, in that it cannot, as the contract requires, deliver the property in as good condition as it was when the agreement was signed. But that is something of which defendant cannot complain. Plaintiff might be heard to object on that ground, if defendant were seeking to compel him to take the property. A person cannot profit from his own wrong. Neither can defendant take advantage of a fortuitous circumstance affecting the property to escape performance if the other party is content to perform. Clearly defendant's reluctance is because it now sees an opportunity for a better bargain. If it can keep $28,000 of insurance money and disaffirm the contract, it can make more out of the property, because the large tract of land on which the schoolhouse stood is undoubtedly worth materially more than $2,000. But that is not equity. Defendant sold the property for $30,000. It is entitled to receive that for it. It is not entitled to any more. Plaintiff agreed to pay that amount for the property. He wants to complete his bargain. If the property has increased in value, that is his good fortune. And that is doubtless what he expected. Otherwise he would not have bought it. But if it had decreased in value he would have had to stand the loss. If there had been no insurance, or insurance in an inadequate amount, and there had not been the clause in the contract requiring delivery in good condition, he would have had to bear the loss by fire, or damage caused by any other agency. Defendant could have compelled him to perform, even in the face of material loss, if he had not been protected by the contract. We may take another viewpoint, and assume that the property surrounding this, between the date of the contract and the time when the deed was to be given, had been subject to a great public improvement which vastly increased the value of the school site and buildings, and also that in the process a small and unimportant part of the schoolhouse site had been taken. Could defendant have refused to perform because it could not convey precisely all the land described in the contract? If plaintiff was satisfied to take what was left, could defendant be heard to object? It seems clear it could not. And would not such a situation be analogous?

Defendant was in occupancy of the property which it had sold.

It had covenanted to deliver the property to plaintiff in as good condition, reasonable wear excepted, as it was when the contract was signed. In view of this covenant it was imperative, for its own protection, that it keep the property insured. If it did not the loss in case of fire would be its own. There was no occasion, because of this covenant, for plaintiff to procure insurance upon his own interest. His interest, practically and legally, was inseparably bound with defendant's. Defendant to protect itself must protect him. This is what it did. When the fire occurred the insurance money took the place of the building. It constituted a trust fund for delivery to plaintiff, instead of the building in the destruction of which the fund had its birth.

This is in accord with equity and with the great weight of authority among the text writers and the decisions in the various states. But the question presented appears never to have arisen squarely in this state. It would be futile to quote from or discuss the many authorities cited by counsel in exhaustive briefs, and the others examined. Reference to but few must suffice.

It has been long established in this state that from the time of entering into a valid contract for the conveyance of land, the estate vests in equity in the vendee and the vendor retains the legal title as a mere lien or security for the unpaid purchase money. " The vendor remains a mere trustee, and his interest is in the proceeds and not in the land; and the vendee becomes trustee of the vendor for the purchase money." Gerard Titles to Real Estate (5th ed.), 499; *Williams* v. *Haddock*, 145 N. Y. 144. Where buildings upon premises under contract of sale are accidentally destroyed by fire, the loss must be born by the vendee. *Sewell* v. *Underhill*, 197 N. Y. 168. And this is true whether the vendor or the vendee be in possession. *Peilegrino* v. *Giuliani*, 118 Misc. Rep. 329. In 39 Cyc. 1641, it is stated: " The rule supported by the weight of authority is that since a purchaser under a binding contract of sale is in equity regarded as the owner of the property, he is entitled to any benefit or increase of value that may accrue to it, and must bear any loss, injury, or depreciation which it may sustain, unless occasioned by the negligence or default of the vendor; and if there is a valid and binding contract between the parties, the application of the rule is not affected by the fact that the purchase-price has not been paid, or that the purchaser is not in possession, or that under the provisions of the contract possession is not to be delivered until a date subsequent to that when the loss or injury occurred."

In regard to the rights of the parties to insurance money in case of loss by fire, 39 Cyc. 1644 states: " So if, * * * the

loss falls upon the purchaser, he is entitled to the benefit of the insurance money, and if it is collected by the vendor he will hold it for the benefit of the purchaser, who will be entitled to credit therefor on the unpaid purchase price."

In Pomeroy's Equity Jurisprudence (4th ed.), vol. 5, § 2283, the rule is thus stated: " On principle it would seem clear that in all jurisdictions throwing the loss by fire on the vendee, the insurance money should go to the vendor in trust for the vendee, to be paid when the vendee should satisfy the security lien of the vendor. Such is the view of the American courts which have passed upon the question."

In *Williams* v. *Lilley*, 67 Conn. 50, property under option was partly destroyed by fire. The damage was repaired and thereafter the vendee elected to exercise his option to purchase and claimed a credit for the amount of insurance money left over after repairing the building. After considering the equities of the case the court said: " We conclude, then, that if in the case before us, the property, at the time the plaintiff demanded the conveyance, had remained as it was after the fire, without reparation, while the money received for insurance was unexpended and unpledged for repairs in the hands of the defendants, the plaintiff would have been entitled to receive such money as part and parcel of the property, which it would have been the duty of the defendants to convey to him. Being money, it of course amounts to the same thing to deduct it from the stipulated purchase price."

A similar doctrine is held in *Skinner & Sons Co.* v. *Houghton*, 92 Md. 68; *Russell* v. *Elliott*, 45 S. D. 184; *McGinley* v. *Forrest*, 107 Neb. 309; *Brakhage* v. *Tracy*, 13 S. D. 343; *Kaufman* v. *All Persons*, 16 Cal. App. 388, and other cases. No one of the authorities in this state relied upon by defendant presents a situation similar to the case under consideration. Thus in *Trumbull* v. *Bombard*, 171 App. Div. 700; affd., without opinion, 225 N. Y. 638, at the time of the loss the relationship of vendor and vendee did not exist between the parties. They were landlord and tenant, though there was an option to purchase which at the time of the fire had not been exercised.

The conclusion seems inevitable, from both reason and authority, that as defendant after the execution of the contract was trustee of the property — both the land and the buildings — for plaintiff, when the fire occurred the situation was not changed; defendant continued to hold the property including the insurance money in place of the building destroyed, in the same trust capacity.

Plaintiff is entitled to judgment declaring his right to a conveyance of the property, to the application of $27,000 of the

insurance money held by defendant to the balance of the purchase price, and to have paid him the remaining $1,000 of the insurance money.

Judgment accordingly.