[Civ. No. 3883. Fifth Dist. Apr. 8, 1980.]

IMA JEAN LONG, Plaintiff and Appellant, v.
ORVILLE LEE KELLER et al., Defendants and Respondents.

**COUNSEL**

Dan W. Lacy, Daniel E. Whitlock, Jr., and Lacy & Whitlock for Plaintiff and Appellant.

Taylor & Taylor and Edward T. Taylor III for Defendants and Respondents.

---

**OPINION**

**CONDLEY, J.**[*]—Judgment was rendered in favor of the plaintiff and appellant for rescission of a contract for the purchase and sale of real property and ordering the return of appellant's $1,000 down payment together with interest.

---

*Assigned by the Chairperson of the Judicial Council.

Appellant alleges the trial court committed error in not crediting her for the insurance money paid to respondents to extinguish her obligation to pay them the balance of $12,000 (the remaining purchase price). In the alternative appellant contends the trial court committed error when it failed to award appellant (hereinafter referred to as buyer) a portion of the fire insurance proceeds paid to respondents (hereinafter referred to as sellers) to reimburse her for the improvements she made to the real property.

The facts are uncontroverted as they come before this court on an engrossed settled statement in lieu of reporter's transcript together with exhibits.

At all times herein mentioned sellers were the record owners of the subject property. From approximately March 1968 until August 21, 1974, buyer and her then husband leased this property consisting of land, house, barn and improvements from sellers. The lease contained an option to purchase the property. During the term of the lease buyer made improvements to the property, namely to the house, and constructed a pole barn, all in contemplation of purchasing the property. Buyer spent $5,795.35 in making these improvements.

On or about August 24, 1974, buyer exercised the option contained in the lease to purchase the property by depositing $1,000 on the $13,000 purchase price, as was provided in said option. Escrow was opened and both parties signed escrow instructions on November 4, 1975. The escrow instructions provided, among other things, that the balance owing, $12,000, was to be evidenced by a note secured by a deed of trust bearing 6 percent interest payable at $100 per month commencing December 1, 1975. The buyer was to furnish a policy of fire insurance with loss payable to the sellers (the holders of the note).

Sellers, during the entire period of the lease and the escrow, paid for and maintained a policy of fire insurance on the property for their own protection. The buyer during this same period did not. On November 11, 1975, prior to the close of escrow, the house and all outbuildings were completely destroyed by fire. Buyer was in continuous possession of the property under the lease until June of 1975 when she subleased the property to others who took possession of the same until the date of the fire when the premises were destroyed.

Sellers collected from their fire insurance carrier the sum of $14,053 for the destruction of the structures on the subject property, including improvements made by buyer.

On May 6, 1976, sellers unilaterally attempted to rescind said contract and tendered to buyer her down payment of $1,000. Buyer returned this check at the time of trial.

On December 9, 1976, buyer filed a complaint against sellers seeking specific performance, or in the alternative, damages for failure to convey the property and a common count for money had and received by sellers in the sum of $13,000. The case was tried before the court, a jury having been expressly waived by the parties.

At the outset we note during the trial buyer stated to the court that she did not want specific performance unless she could obtain credit for the insurance money paid to sellers to extinguish her obligation to pay sellers the remaining purchase price of $12,000. Sellers did not seek specific performance and did not oppose rescission. As an alternative, buyer asked for the return of her down payment and a portion of the fire insurance proceeds to reimburse her for the improvements made to the real property.

The contract between the parties, as evidenced by the escrow instructions, was subject to specific performance by either party and the trial court so found.

Each party to the lease, and as the same was modified by the escrow instructions, at all times had a separate and distinct insurable interest in the subject property and in the improvements on the same regardless of who made them.

■ "As noted in another portion of this article, different persons may have separate insurable interests in the same property, as, for example, vendor and vendee, mortgagor and mortgagee, owner and lienholder, lessor and lessee, or life tenant and remainderman. However, in the absence of an agreement to the contrary, none of the persons with insurable interests in the same property is entitled to the proceeds of insurance obtained by another on a separate insurable interest." (39 Cal. Jur.3d, Insurance Contracts, § 485, p. 806.)

Civil Code section 1662[1] (also known as Uniform Vendor and Purchaser Risk Act) provides in pertinent part as follows: "Any contract hereafter made in this State for the purchase and sale of real property shall be interpreted as including an agreement that the parties shall have the following rights and duties, unless the contract expressly provides otherwise:

"            .     .      .     .      .      .      .      .      .      .     "      .     .     .

"(b) If, when either the legal title or the possession of the subject matter of the contract has been transferred, all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid. . . ."

Both parties acknowledged that buyer was in possession of the property at the time of the fire; therefore subdivision (b) of the above statute applies. As such, buyer was not relieved from her duty to perform, nor was she entitled to recover any portion of the price already paid. Buyer was bound by the contract and carried the risk of loss as the purchaser in possession. (*Palos Verdes Properties* v. *County Sanitation Dist. No. 5* (1960) 177 Cal.App.2d 679, 690 [2 Cal.Rptr. 537].)

The lease agreement introduced at trial contains no provision requiring either party to procure a policy of fire insurance or any insurance on the demised premises. However, paragraph 7 of said lease acknowledges that lessor (seller) has in force and effect a policy of fire insurance and that should lessee's (buyer's) occupancy cause the rates to go up, lessee (buyer) shall pay the difference.

The escrow instructions signed by both parties obligated buyer, prior to the close of escrow, to procure a policy of fire insurance with liability of not less than $12,000 and with a loss payable to the holder of the note (sellers) secured by a deed of trust. From the inception of the lease to the destruction of the structures by fire, a period of some seven years, buyer failed to protect herself by insuring her own interest. Buyer concedes that during this time she had a separate and distinct insurable interest.

---

[1]Civil Code section 1662 rejects the "equitable conversion theory," which places the risk of loss on the purchaser in all situations when the property is destroyed, in favor of the Williston "possession" rule. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 119.)

■ We now take up the issues raised by buyer in this appeal. The first issue raised by buyer is whether the trial court erred in failing to credit part of the insurance proceeds paid to sellers to extinguish the unpaid balance of the purchase price due on the contract of sale. The case of *White* v. *Gilman* (1903) 138 Cal. 375 [71 P. 436] is dispositive of this issue. In that case one Rucker contracted to sell a lot to White on an installment sales contract. White took possession and built a house upon the lot. Ultimately, Gilman acquired Rucker's (vendor's) interest in the property and he insured the dwelling erected by White on his own behalf and for his own protection. The dwelling was destroyed by fire and the insurance company paid the insurance proceeds to Gilman (vendor). Upon learning of this White (vendee) filed suit seeking to force Gilman to execute a deed to him on the theory that White was entitled to apply the insurance money on the balance due Gilman as vendor. The court, at page 377, held: "This claim of the plaintiff is erroneous. He had no interest in the insurance effected by defendant. Each party had an insurable interest in the house. The plaintiff was a purchaser in possession, and could have insured the house, as owner, for his sole benefit; and if he had done so, in the absence of an agreement that the insurance should be paid to the vendor to the extent of the unpaid purchase money, the vendor could have no claim upon it. So, the defendant, having a vendor's lien, had an insurable interest to the extent of the unpaid purchase money, and could insure for his own benefit to protect his own interest, and having insured the building at his own expense, and for his own benefit, the plaintiff had no interest in the insurance money paid to defendant, and could not require that any part of it should be applied in satisfaction of the defendant's claim for the unpaid purchase money."

Another case that touches upon this problem, although not exactly on point, is *Russell* v. *Williams* (1962) 58 Cal.2d 487 [24 Cal.Rptr. 859, 374 P.2d 827]. In that case a husband and wife owned an improved piece of property in joint tenancy. The husband and wife were divorced; however, in the divorce decree the joint tenancy property was not distributed. The husband, after the divorce, procured a policy of fire insurance on the dwelling to protect his interest. Thereafter, the house burned down, the husband died and the surviving joint tenant, Russell, brought suit against the administrator of her deceased husband's estate claiming that the insurance proceeds belonged to her.

The court, in deciding the case against the surviving joint tenant, held on page 491: "However, unless the insured has an obligation to in-

sure, or equitable considerations are present, the proceeds of a policy issued to and paid for by the named insured on his separate insurable interest are not subject to the claims of others who also have an interest in the property covered by the policy."

The court in *Alexander* v. *Security-First Nat. Bank* (1936) 7 Cal.2d 718, 723 [62 P.2d 735], in discussing the law generally, states the rule as follows: "Different persons may have separate insurable interests in the same property, as, for example, a mortgagor and a mortgagee, a lessor and lessee.

"In the absence of special provisions in the lease there is no obligation on the lessee to procure insurance for the benefit of his lessor insuring against fire or other risk, and neither lessor nor lessee ordinarily has an interest in the proceeds of insurance obtained by the other on his own separate insurable interest. [Citations.] The rule is the same as between mortgagor and mortgagee, vendor and vendee, life-tenant and remainderman. ( . . . *White* v. *Gilman*, 138 Cal. 375 . . . .)"

Buyer relies upon the case of *Kaufman* v. *All Persons, etc.* (1911) 16 Cal.App.388 [117 P. 586] as controlling. In *Kaufman* the vendor obtained a loan from a savings and loan association and gave a deed of trust on a building as security for the loan. In compliance with the loan agreement the vendor secured insurance on the building payable to the savings and loan. Thereafter, the vendor contracted to sell the building subject to the deed of trust to the plaintiff/purchaser. The plaintiff agreed to pay a specified sum to the vendor and to assume the vendor's indebtedness to the savings and loan association. The building and improvements were destroyed by fire and the insurance company paid the savings and loan association. In a subsequent action by vendee to establish title to the building site the District Court of Appeal upheld plaintiff's claim to the insurance benefits.

*Kaufman* presents a case of special circumstances clearly distinguishable from the case at bar. As acknowledged by the *Kaufman* court: "The policy here, as has been seen, was by its own terms, and under the agreement between said society and the defendants, made payable, in case of the destruction of the building by fire, to the savings society, for the sole purpose of extinguishing or reducing a debt which the plaintiff, under her agreement with defendants and with the knowledge and consent of the creditor, had assumed and agreed to pay." (*Id.*, at p. 400.)

Buyer further cites *In re Future Manufacturing Cooperative* (N.D.Cal. 1958) 165 F.Supp. 111 as supportive of her position. *In re Future* has no bearing on the case at bench (a contract for the purchase and sale of improved real property subject to the rules contained in the Uniform Vendor and Purchaser Risk Act) as it attempts to deal with the law governing a sales contract of personal property, the subrogation rights of vendor's insurance company, and the vendor's rights when the entire subject matter of the personal sales contract is destroyed.

Buyer at trial and now on appeal seeks the benefits of sellers' insurance proceeds, claiming that once escrow opened buyer's interest was in the land while the sellers' interest was only the unpaid purchase price. Once a contract is entered into for the purchase and sale of land, the vendors' interest in equity is the unpaid purchase price while the buyer's interest is in the land. (*Estate of Dwyer* (1911) 159 Cal. 664, 675 [115 P. 235]; *Elliott* v. *McCombs* (1941) 17 Cal.2d 23, 31 [109 P.2d 329].) However, an insurance policy does not "run with the land." Insurance Code section 305 states: "The mere transfer of subject matter insured does not transfer the insurance, but suspends it until the same person becomes the owner of both the insurance and the subject matter insured." (See also *Alexander* v. *Security-First Nat. Bank* (1936) 7 Cal. 2d 718, 723 [62 P.2d 735].)

A fire insurance policy does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property. In the absence of a special contract, the proceeds of a fire insurance policy are not a substitute for the property, the loss of which is the subject of indemnity. The sum paid is in no proper or just sense the proceeds of the property. (*Russell* v. *Williams, supra*, 58 Cal.2d at p. 490.)

There are other policy considerations leading us to conclude the decision of the trial court must be affirmed.

Granting buyer the proceeds of the insurance policy of sellers would result in a windfall to the buyer. It would be a clear case of unjust enrichment, since buyer would gain the benefits of insurance coverage for which she never contracted or paid. Buyer would receive a $13,000 piece of property for $1,000. There is no windfall or unjust enrichment to sellers. Sellers, just as buyer, had an insurable interest in this property. Sellers contracted and paid for fire insurance. When the fire

occurred, sellers received exactly what they contracted and paid for—the proceeds of the fire insurance policy.

It is basic that an insurance policy is a personal contract between the insured and the company. ■ "A contract of insurance must be assented to by both parties either in person or by their agents. There must be a meeting of the minds of the parties on the essential terms and elements of the contract. The rule states that these essential terms include, in general, the following: (1) the subject matter to be insured; (2) the risk insured against; (3) the commencement and period of the risk undertaken by the insurer; (4) the amount of insurance; and (5) the premium and the time at which it is to be paid." (39 Cal.Jur.3d, Insurance Contracts, § 18, p. 217.) There is no privity of contract between buyer and the insurance company in the case at hand.

Furthermore, Insurance Code section 2071 would appear to prohibit giving buyer the benefit of sellers' insurance. As it states in part: "...this company...does insure...[sellers' property]...to the extent of the actual cash value of the property at the time of loss, but...[not] in any event for more than the interest of the insured, against all LOSS BY FIRE...." To give buyer the benefit of sellers' insurance would extend the insurer's liability beyond the interest of the insured and allow recovery to a beneficiary not named or covered in the policy.

For the reasons stated above the court was correct when it refused to apply sellers' insurance proceeds for the benefit of the buyer.

■ As an alternative recovery, buyer seeks reimbursement for the improvements made by buyer on the leasehold property, to wit: Improvements on the house and the construction of a pole barn in the amount of $5,795.35. Unless there is an express covenant in the lease to the contrary, generally any improvements constructed on the demised premises are the property of the landlord at the end of the term. (See 4 Miller & Starr, Current Law of Cal. Real Estate, Physical Improvements, § 27:78, p. 386.) The trial judge made an express finding that there was no provision in the lease in question entitling buyer to reimbursement for the $5,795.35 she invested in improvements while she was a tenant.

Buyer alleges that said improvements were made "in contemplation of purchasing the property," and urges, as her theory of recovery, that she should be able to recover as a "good faith improver" as the same is

defined in Code of Civil Procedure section 871.1 et seq. Section 871.1, Code of Civil Procedure, reads as follows: "As used in this chapter, 'good faith improver' means:

"(a)   A person who makes an improvement to land in good faith and under the erroneous belief, because of a mistake of law or fact, that he is the owner of the land.

"(b)   A successor in interest of a person described in subdivision (a)." Buyer, in making these improvements in contemplation of purchasing the property, in no way became a person who in good faith and under an erroneous belief thought she was the owner of the land. Her contention that she contemplated purchasing the property clearly takes her out of the protection of these provisions. At oral argument appellant conceded this point.

The judgment is affirmed. Costs to respondents.

Franson, Acting P. J., and Zenovich, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 4, 1980.