**FRUEHAUF CORPORATION, Plaintiff-Appellant,**

v.

**ROYAL EXCHANGE ASSURANCE OF AMERICA, INC., Defendant-Appellee.**

No. 81–4497.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1982.

Decided April 29, 1983.

---

* Honorable Dudley B. Bonsal, United States Senior District Judge for the Southern District of New York, sitting by designation.

Alexander R. Imlay, Kerner, Colangelo & Imlay, San Francisco, Cal., for plaintiff-appellant.

Donald F. Morey, Bohnert, McCarthy, Flowers, Roberts & Damir, San Francisco, Cal., for defendant-appellee.

Before ANDERSON and BOOCHEVER,* Circuit Judges, and JAMESON,** District Judge.

JAMESON, District Judge:

Appellant, Fruehauf Corporation, brought this action against appellee, Royal Exchange Assurance of America, Inc., under a casualty insurance policy issued by Royal to Pacific Far East Lines (PFEL). Fruehauf seeks indemnification for its security interest in eight tractors sold by Fruehauf to PFEL under an installment sales contract (chattel mortgage) that required PFEL to insure the tractors against loss. Following discovery and submission of affidavits, documents and memoranda by both parties, the district court granted Royal's motion for summary judgment. We affirm.

### I. Factual Background

On September 23, 1976, Fruehauf sold 12 tractors to PFEL. At PFEL's request, Fruehauf executed bills of sale for eight of the tractors to "Saudi Trucking Services, c/o IACC Agency, P.O. Box 106, Dammam, Saudi Arabia, (Buyer)." [1] PFEL executed a chattel mortgage to Fruehauf covering all of the tractors. The mortgage required,

---

* Subsequent to oral argument Judge Boochever replaced Judge Reinhardt as a member of the panel.

** Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

1. An employee of Fruehauf stated in his affidavit that PFEL represented that "Saudi Trucking Company" was the name under which it conducted business in Saudia Arabia and that this "was required in order that the units could properly be used in that country." Fruehauf filed its U.C.C. 1 Statement naming PFEL—not Saudi Trucking Services—as debtor.

*inter alia,* that the buyer procure "insurance against theft, loss, total destruction of or damage to the goods being purchased hereunder." [2]

PFEL had a policy with Royal covering its shipping stores, office furniture, and shipping equipment. The relevant terms of the policy were: (1) property for which PFEL was liable to others was covered; (2) that property was protected against "all risks of physical loss or damage from any external cause whatsoever and howsoever occurring"; (3) proof of loss had to be given to Royal within twelve months after notice of loss; (4) subject to California law, suits against Royal had to be brought within twenty-four months of the "happening of the loss"; and (5) Royal could cancel by giving thirty days' written notice to PFEL.

On April 29, 1977 Royal issued an endorsement to the policy adding coverage of the 12 tractors to the extent of $372,000. Royal sent a confirmation of the endorsement to PFEL and a copy of the confirmation to Fruehauf. On June 1, 1977, Royal issued a new policy providing the same coverage as the original policy. Fruehauf was never named as a loss-payee, additional insured, or coinsured in the policies, endorsements or confirmations.

On January 31, 1978, PFEL filed for bankruptcy. On February 2, 1978, Royal mailed PFEL a notice cancelling the policy, effective March 3, 1978. Royal did not send a notice to Fruehauf. Meanwhile, PFEL defaulted on its installment payments to Fruehauf. Fruehauf was precluded from attempting to regain possession of the tractors by the automatic stay imposed by the bankruptcy proceedings.

On August 28, 1978, the trustee in bankruptcy wrote a letter to Fruehauf stating that four of the tractors were in Baltimore, Maryland, and eight were "in the possession of International Associated Cargo Carrier (IACC) in Dammam, Saudi Arabia," and that the "above equipment is being abandoned by us to the Fruehauf Corporation." [3]

Pursuant to a stipulation between Fruehauf and the trustee in bankruptcy, the stay was lifted on September 13, 1978, and Fruehauf was authorized to proceed to enforce its security interest in the tractors.[4] Fruehauf recovered the four tractors in Baltimore. Fruehauf alleges that despite diligent efforts on its part, it has been unable to recover any of the eight tractors in Saudi Arabia, claiming that it learned that the IACC refused to allow inspection of its premises to verify the location of the tractors or to surrender the tractors except upon payment of a "release fee". On August 3, 1979, Fruehauf made a claim under PFEL's policy for the value of the eight tractors. Royal denied coverage on May 18, 1980.

## II. *Proceedings in District Court*

Fruehauf brought this action on September 4, 1980. Royal moved for summary judgment on the grounds that (1) if the loss occurred before cancellation of the policy on March 3, 1978, the action was barred by the

---

2. The provisions of the mortgage relating to "Insurance" read:

   Buyer is required to furnish insurance against the theft, loss, total destruction of or damage to, the goods being purchased hereunder in an amount equal to the actual cash value of said goods from time to time. Buyer has the option of furnishing the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages, through any insurance company authorized to transact business in the state of Buyer's residence or principal office as shown at the beginning of this instrument. Where permitted by law, Seller may require that said insurance company be reasonably satisfactory to Seller. Should Buyer fail to provide satisfactory insurance, Seller may do so at Buyer's expense. Buyer hereby irrevocably authorizes Seller to act as Buyer's attorney at Seller's option in making, adjusting, and settling claims under such insurance policies and endorsing any drafts issued in connection therewith.

3. The letter concluded: "We presently have the equipment insured, but you should move to take possession and must assume any insurance responsibility."

4. The stipulation noted that there was no possibility of the bankrupt estate realizing any equity in the tractors over and above the amount of PFEL's indebtedness to Fruehauf.

24 month contractual period of limitations; and (2) if the loss occurred after March 3, 1978, no policy issued by Royal was in effect.

The district court granted Royal's motion on the grounds that (1) Fruehauf is not a loss payee or a coinsured under the policies or endorsements; (2) PFEL had wilfully abandoned the tractors and wilful abandonment does not constitute a risk that is insured against by the policies; and (3) "there could be no reasonable or normal expectation on the part of the parties concerned, including plaintiff Fruehauf Corporation, that a loss of the type that occurred here would be covered by the policy in question."

### III. Contentions on Appeal

Appellant contends that the district court erred in finding as a matter of law (1) that PFEL "abandoned" the tractors and (2) that Fruehauf was not an additional insured under Royal's policy. Specifically appellant contends that (1) IACC may have refused to surrender possession "because the tractors, having originally come into the agent's possession lawfully, were later converted by the agent's demand for payment of a 'release fee'", or (2) PFEL may have transferred possession and registered title to IACC "to reduce its obligations to the agent, thus converting and extinguishing Fruehauf's interest in the tractors." Fruehauf argues that either alternative would "constitute a physical loss of the units from an external cause" and would be covered by Royal's policy.

Appellee contends that (1) the entire thrust of appellant's case is an attempt "to change the property insurance issued by the Royal Exchange to PFEL into a guarantee of PFEL's contractual obligation to Fruehauf;" and (2) the district court properly concluded that Fruehauf was not an additional insured under the policy.

### IV. Standard of Review

■ We recognize at the outset that where findings are made which go to the merits and disclose factual issues necessary to a determination of the litigation, an order granting summary judgment must be reversed. *Ornellas v. Oakley,* 618 F.2d 1351, 1355 (9 Cir.1980). It is equally clear, however, that a judgment may be sustained on any ground that finds proper support in the record. *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1956). In summary judgments the test is whether, with respect to any dispositive issue, there is any genuine issue as to any material fact and, if not, whether viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is entitled to prevail as a matter of law. *Federal Deposit Ins. Corp. v. First Nat. Finance,* 587 F.2d 1009 (9 Cir.1978).

### V. Was Fruehauf a Co-Insured under Royal's Policy?

■ We agree with the district court that Fruehauf was not a co-insured under Royal's policy. Neither the endorsement on the original policy nor the new policy named Fruehauf as a payee or additional insured.[5] As the district court noted, "A policy does not insure the property covered thereby, rather it is a personal contract between the insured, here Pacific Far East Lines, Inc., and the underwriter, here the Royal Exchange Assurance of America, Inc. *Russell v. Williams,* (1962) 58 Cal.2d 487 [24 Cal.Rptr. 859]." See also *Long v. Keller,* 104 Cal.App.3d 312, 163 Cal.Rptr. 532 (1980). Fruehauf's security interest in the tractors does not make it a party to the insurance contract. The builder's risk cases cited by Fruehauf to support its contention that it was a coinsured are distinguishable.

■ The district court did not consider whether Fruehauf's status as a secured creditor gives it an equitable right to bring an action against Royal under the policy. If a mortgagor agrees to have a mortgagee named as an additional insured or loss-payee and breaches that agreement, the

---

5. The only change in either policy was in Paragraph 3 "Property Insured", extending the property to include the 12 tractors.

mortgagee has an equitable lien on the proceeds of the mortgagor's policy. *Woody v. Lytton Savings and Loan Association,* 229 Cal.App.2d 641, 646, 40 Cal.Rptr. 560, 563 (1964). Assuming, *arguendo,* that there was evidence to support an agreement by PFEL to make Fruehauf a loss-payee or additional insured, for the reasons set forth below we conclude that the policy did not cover the alleged "loss".

### VI. *Was There a Loss Covered by the Policy?*

It is undisputed that on September 23, 1976 the eight tractors were transferred by Fruehauf to Saudi Trucking Service; that the tractors were shipped to Saudi Arabia in care of IACC Agency with Fruehauf's knowledge and consent; and that the tractors were in IACC's possession in Saudi Arabia at the time of PFEL's default and bankruptcy. On June 30, 1978, Fruehauf filed a complaint in the bankruptcy court seeking an order allowing it to recover possession of the secured property. Following negotiations with Fruehauf's counsel, the trustee in bankruptcy wrote the letter of August 28, 1978, to Fruehauf abandoning any interest of PFEL and the bankrupt estate in the tractors. Fruehauf claims that after the order of September 14, 1978 was entered, Fruehauf "learned that IACC refused to allow inspection of its premises to verify the location of the units, and also via another source, that the agent refused permission to surrender the units except upon the payment of a 'release fee'." There is no evidence that any further effort was made by Fruehauf to enforce its security interest.

There is no contention that the tractors are not still in IACC's possession in Saudi Arabia and no evidence that any of the tractors were damaged or destroyed. The refusal of IACC to deliver the tractors to Fruehauf would not in itself constitute a "physical loss or damage" under the policies issued by Royal. We agree with appellee that Fruehauf in effect is seeking to enforce PFEL's contractual debt against the property insurance policy issued by Royal.[6]

Fruehauf, however, argues that the tractors were converted either by IACC "holding them for ransom in an attempt to recover what it was owed by PFEL" or "by PFEL itself in transferring title to the equipment to IACC in order to reduce its obligation to its agent." They contend that under the broad terms of Royal's policy conversion constitutes a loss covered by the policy.

The record does not disclose when the tractors "may" have been transferred by Saudi Trucking Service (PFEL) to IACC. Any transfer would, of course, be subject to Fruehauf's chattel mortgage. A transfer by PFEL would not in itself constitute a conversion. Under all of the circumstances of this case, it does not appear that there would be any conversion prior to IACC's refusal to deliver the tractors to Fruehauf. This occurred sometime after September 14, 1978.[7] Royal's policy had been cancelled effective May 3, 1978. Consequently, assuming that there was a conversion as alleged by appellant and that the conversion would be covered by the policy, the policy had been cancelled at least six months before the alleged conversion.

AFFIRMED.

---

**6.** In its brief in district court Fruehauf argued: "[I]t takes no imagination to conclude that PFEL was 'legally liable' to Fruehauf for the balance due on the contract *whether the units were lost or not.*" [emphasis added.]

**7.** As noted above (n. 3) the trustee in bankruptcy had advised Fruehauf on August 28, 1978 that it should "move to take possession and must assume any insurance responsibility."