George H. Fields, Respondent, *v.* Western Millers Mutual Fire Insurance Company, Appellant.

Western Millers Mutual Fire Insurance Company, Appellant, *v.* George H. Fields et al., Respondents.

Submitted February 25, 1943, decided April 15, 1943.

*C. Addison Keeler* for appellant.

*Norman M. Pinsky* and *Harry Kantor* for respondents.

DESMOND, J. Plaintiff Fields sues on two policies of insurance issued to him by defendant Western Millers Mutual Fire Insurance Company. The complaint describes the two policies as insuring Fields against loss by fire damage to his automobile truck and trailer respectively, then alleges that there was damage by fire to both vehicles while the policies were in effect, and that defendant failed to pay. The insurer's answer con-

tains, besides certain defenses, a counterclaim against said Fields and against one Lake, which counterclaim has, on the motion of said Fields and Lake, been stricken out for insufficiency. We concern ourselves only with the question of the sufficiency of that counterclaim.

The counterclaim has to do only with the insurance policy covering the tractor. It alleges that the policy was issued to Fields " as assured " with a provision that any loss by fire damage should be paid to said Fields as assured and Autocar Sales & Service Company, Inc., " as their interests may appear." The Autocar Company, says the counterclaim, was the unpaid vendor of the tractor. The policy contained a notation to the effect that there was an encumbrance on said tractor to said Autocar Company in the amount of $1,000. Further describing this policy, which is not in the record, the counterclaim asserts that in the policy there was a provision that " Autocar Sales & Service Company, Inc., would receive notice in writing of any cancellation of the policy." The counterclaim informs us that assured Fields failed to pay the premium and that the insurer thereupon proceeded, before the date of the fire, to cancel the policy by notice to Fields but failed (apparently by inadvertence) to give any such notice to the Autocar Company. By reason of this oversight, alleges the insurer, the policy at the time of the fire was cancelled as to Fields but in full force and effect as to the Autocar Company. The counterclaim then describes the transaction whereby Fields had acquired the tractor from the Autocar Company, attaching as an exhibit the conditional sale agreement between those two parties. That contract, in conventional form, requires the payment by Fields to the Autocar Company, of $1,612.50, secured by notes maturing on various dates. By that instrument Fields, the purchaser, agrees to keep the tractor insured against fire by insurance payable to the vendor as its interest may appear. It is further alleged in the counterclaim that one Ellis R. Lake, against whom, as well as Fields, the counterclaim demands judgment, was a co-maker of the notes given as security for payment of the purchase price, although Lake was not a vendee and not an insured under the policy. The counterclaim alleges a default by Fields and Lake on the notes, resulting in an overdue indebtedness, at the time of the fire, of $933.48. The fire damage, according to

the counterclaim was $1,008.48, by reason of which, pleads the insurer, the latter became obligated to pay to the Autocar Company, but not to Fields, on the policy, the sum of $933.48, representing the balance due on the conditional sale contract. That sum, says the insurer, it paid to the Autocar Company pursuant to the policy. Thereupon the Autocar Company assigned to the insurer its (vendor's) rights under the conditional sale contract. As a result of all of this, says the counterclaim, the insurer became by subrogation the owner of a claim against Fields and Lake in the amount of $933.48.

Fields and Lake, moving to dismiss the counterclaim, argue that the payment by the insurer to the Autocar Company was a payment under the policy in which Fields was the insured and that such payment operated to Fields' benefit so as to pay and extinguish the Autocar Company's claim under the conditional sale contract. For that reason, and because there is no subrogation clause in the insurance policy, they argue, no subrogation resulted but instead the conditional sale contract was paid off, and the assignment by the Autocar Company was a futility, accomplishing nothing. We agree with that position, as did the courts below, and hold that the insurer by making the payment to the Autocar Company, and by taking the assignment from that company, acquired no rights against Fields (or against Lake) since Fields was, and remained, the insured under the policy, so long as the policy remained in existence. The decisions in this court which require that result are numerous, and, we think, plain in their holdings and in their applicability to this situation. (Throughout this opinion we use " conditional vendor " and " mortgagee " interchangeably, since the rules of law we are examining are applicable to either.)

When an insurance policy names the owner of goods as the insured, with a " loss payable to mortgagee " clause, and there is no other provision as to the mortgagee or in his favor, the mortgagee is a mere nominee of the owner-insured to receive the insurance moneys. (*Grosvenor* v. *Atlantic Fire Ins. Co.*, 17 N. Y. 391.) When a policy contains additional language to the effect that it is issued to the owner and the mortgagee " as their interests may appear," then there is recognized and covered also, the insurable interest of the mortgagee, to the extent of his interest (*Mussey* v. *Atlas Mutual Ins. Co.*, 14 N. Y.

79); to that extent the insurance is for the mortgagee's benefit. (*Pitney* v. *Glen's Falls Ins. Co.,* 65 N. Y. 6.) In the absence of a subrogation clause (and there is none in this case) the rule is that a payment to a mortgagee under such a policy *is a payment pro tanto of the mortgage debt.* (*Kernochan* v. *New York Bowery F. Ins. Co.,* 17 N. Y. 428.) Such a policy accomplishes an insurance of the property and not of the debt, and the only importance of the debt is that it gives the mortgagee an insurable interest in the property. " The plaintiff held the policy as further security for the debt to apply upon the debt whatever should be received on the policy. Having this effect, the agreement precluded a resort by the defendants, [the insurers] on paying the loss, to the bond and mortgage, by way of subrogation, for their reimbursement." (*Kernochan* case, *supra,* 17 N. Y. at p. 434.) That the *Kernochan* case states the applicable rule where the policy contains no subrogation clause is made plain by the very cases which, because of the presence of subrogation clauses in the policies, arrive at a different result. The leading case of that type (*Foster* v. *Van Reed,* 70 N. Y. 19, 26), says: " The authorities cited to sustain this position [*i. e.,* the position taken by Fields here] are cases where there was no agreement as to subrogation, and do not establish such a proposition in cases in which there was a clause in the policy, authorizing an assignment in case of loss." Such a subrogation clause, if not found in the policy, cannot be supplied. A clause to accomplish such a purpose appears in the " standard fire insurance policy of the state of New York " (printed at length in § 168, Insurance Law, see lines 67 to 85, see *Goldstein* v. *National Liberty Ins. Co.,* 256 N .Y. 26, 30). This court (in another connection) has held that even where, as in the policy before us, the loss is made payable to the mortgagee as interest may appear, nonetheless the so-called standard mortgagee clause, subrogating the insurer to the mortgagee's rights on payment to him, cannot be read into the policy by implication. (*Hessian Hills Country Club, Inc.* v. *Home Ins. Co.,* 262 N. Y. 189.) Some of the other cases in this court pointing out that there can be no subrogation without a subrogation clause are *Benjamin* v. *Saratoga County Mut. Fire Ins. Co.* (17 N. Y. 415), *Wood* v. *North Western Ins. Co.* (46 N. Y. 421, 424), *Hay* v. *Star Fire Ins. Co.* (77 N. Y. 235, 240) and *Ulster County Sav. Institution* v. *Leake* (73 N. Y. 161).

The *Ulster County* case puts it this way (p. 164): "If by any arrangement between the mortgagor and mortgagee, the insurance is effected for the benefit of the mortgagor, or if the mortgagor pays the premium and loss ensues, the mortgagor is entitled to the benefit of it by having it applied in payment of his mortgage."

Of course if a policy is issued to the mortgagee, procured by him and so written as to cover his interest only, then the owner can claim no rights under it and the insurer may be subrogated as against the owner-mortgagor. Such situations are dealt with in cases like *Excelsior Fire Ins. Co.* v. *Royal Ins. Co.* (55 N. Y. 343): "It is settled that when a mortgagee, or one in like position toward property, is insured thereon at his own expense, upon his own motion and for his sole benefit, and a loss happens to it, the insurer, on making compensation, is entitled to an assignment of the rights of the insured." (p. 359.) But the policy we are here enforcing was not one taken out by a mortgagee for his own sole benefit, nor has it a subrogation clause. There is, therefore, no basis whatever for subrogation, and no efficacy to the assignment.

This rule of law that a policy taken out by an owner to protect his mortgagee as well as himself continues to protect the owner in the event of a payment to the mortgagee, unless otherwise provided, is based on the essential nature of the transaction. Such a policy, furnished to the mortgagee, is not a separate insurance of the debt, but is a separate security for the debt. Under familiar rules, amounts realized by the creditor from such a security, must be credited upon the indebtedness. "The general rule, that the proceeds of collateral securities in the hands of the creditor are to be applied, when received by him, in the reduction of the debt [citing case] would require that the insurance money, when collected by the plaintiff, [mortgagee] should be applied upon the judgment, and, if sufficient to pay it, should extinguish it." (*Waring* v. *Loder,* 53 N. Y. 581, 584.)

Of course, the insurer may contract for subrogation and such a contract will be enforced. And the insurer may go further and cover by appropriate language the exact situation which here arose, that is, a default by the owner-insured leaving the mortgagee's rights unimpaired. The "standard fire insurance policy" above alluded to contains a paragraph dealing with

that contingency and providing in terms that in such a case the insurer, on paying the loss, becomes entitled to subrogation and to an assignment of the mortgage debt. Such clauses have been in use for many years in this State. They "make the policy operate as an insurance of the mortgagors and the mortgagees separately, and * * * give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts." (*Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141, 154.) The provision for subrogation, found as a part of such a mortgagee clause, is a benefit from mortgagee to insurer, in consideration of the added protection afforded to the former by the clause (*Hastings* case, same page). Whatever be the law in other jurisdictions, it will be found that in every case in this State where subrogation has been allowed to an insurer who pays the mortgagee despite the insurer's non-liability to the mortgagor, such subrogation is based on specific language in the policy to that effect. (See *Barile* v. *Wright,* 256 N. Y. 1, 5.) There was, we repeat, no such language here. The policy was a simple one insuring the owner and the mortgagee as their interests might appear. It had no language calculated or sufficient to turn it into some other kind of contract with the mortgagee, if the mortgagor should fail to pay the premium. "The contract of insurance has its full effect between the parties by payment of the damage, and cannot survive to assume a new face against a third person." (*Shotwell* v. *Jefferson Ins. Co.*, 5 Bosworth, 247, 264.) If the insurer wanted a subrogation clause, it knew how to require one. "The insurer makes it part of his contract that he shall have these privileges, and in that view undertakes the risk and graduates his premium. There was no such stipulation here." (*Shotwell* case *supra,* p. 264.) There being no right to subrogation, the insurer, "upon payment of the indemnity promised, simply performs his contract" (*Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454, 467), and that is the end of the whole thing.

We are told, however, that this is the kind of case where subrogation may be based not upon express agreement but upon principles of natural justice which, frowning upon unjust enrichments, require that one who furnishes money to pay a

debt (such as a surety) should be substituted for the creditor and should acquire the latter's rights. But the insurer here paid out its money because it was an insurer and because there had been loss and damage from a peril insured against. The insurer was not paying off the Autocar Company's mortgage as surety for Fields and Lake. The obligation it satisfied was its own obligation under a contract issued to, and insuring, Fields. As to the equities of the situation, it was the insurer's own delinquency in failing to notify the vendor of the vendee's failure to pay the premium, that was the proximate cause of the insurer's difficulties. Had the insurer given that notice, one of two things would have thereupon happened. Either the vendor would have paid the premium and thus kept both vendor and vendee covered, or the insurer would have been relieved from any liability to either.

We should point out that, in saying that there is no subrogation clause in this policy, we have not overlooked the clause which puts the insurer in a position to demand "from the assured an assignment of all right of recovery against any party for loss or damage * * *." Clearly that means an assignment of a claim against some third party for damaging the vehicle.

The judgments appealed from should be affirmed with costs.

CONWAY, J. (dissenting). This is an appeal by defendant Western Millers Mutual Fire Insurance Company from judgments entered upon orders of the Appellate Division, Third Department, affirming orders made at Special Term, Broome County, granting motions made by plaintiff Fields and defendant Lake, directing the dismissal of the counterclaim contained in the answer of said defendant company upon the ground that it failed to state facts sufficient to constitute a cause of action.

On this appeal we consider only the counterclaim contained in the answer of the defendant insurance company without reference to the complaint or the other portions of the defendant's answer.

The plaintiff Fields purchased a tractor from the Autocar Sales & Service Co., Inc., hereinafter called Autocar. The company retained title to the automobile, payment for which was to be made under the terms of a conditional sale contract, in fifteen installments represented by promissory notes. The con-

tract and the notes were signed by Fields and also by one Lake, whose liability depends upon the same facts as does Fields' liability. The conditional sale contract provided that the purchaser Fields should forthwith insure the automobile against fire, theft and collision to an amount and in a company satisfactory to Autocar. A policy of insurance was obtained in the defendant company which provided that the loss should be payable, as interest might appear, to Assured and Autocar. The named Assured was the plaintiff Fields. The first of the promissory notes was payable September 20, 1940. The last monthly note was due on November 20, 1941. Fields defaulted in payment of the installments and notes due in February, April, May, June and July, 1941. On June 2, 1941, the automobile was damaged by fire to such an extent that when it had been repossessed by Autocar and sold at public auction it brought but seventy-five dollars. Fields had not only defaulted in payment of the installments and notes but he had defaulted in payment of the premium for the insurance upon the automobile. The insurance had been cancelled by notice to the Assured. No notice of cancellation had been given to Autocar and concededly the defendant insurance company continued to be obligated to Autocar upon the fire insurance policy. The result was that at the time of the fire there was no existing insurance for which anyone had paid a premium. There was insurance, however, covering the interest of Autocar in the automobile subject to the conditional sale contract. In other words there was a contract of insurance covering only the interest of the vendor under the conditional sale agreement. To that contract the purchaser or vendee had become a stranger. The purchaser Fields was still obligated under his agreement and upon his promissory notes to pay for the automobile and had breached his agreement to carry fire insurance upon the subject of the sale contract. After the cancellation, Fields no longer had any rights under the policy. He was no longer an assured.

There is a standard mortgagee clause in the standard fire insurance policy provided by statute in this State. It reads as follows: " On payment to such mortgagee of any sum for loss or damage hereunder, if this Company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's right of

recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's right to sue; or it may pay the mortgage debt and require an assignment thereof and of the mortgage." There is no such standard policy or provision in this State affecting automobiles either by statute or departmental regulation. There was no such clause in the fire policy herein involved.

After the repossession and sale of the automobile herein there remained due to Autocar under the contract and upon the promissory notes, the sum of $933.48 which the defendant company paid to Autocar, taking an assignment of the conditional contract of sale. It is on the theory of subrogation that the defendant insurance company seeks recovery of that sum from Fields and Lake by its counterclaim.

Most of the cases involving the question of subrogation by an insurance company to the rights of a mortgagee against a mortgagor under a fire policy have arisen in connection with policies issued in conformity with the statutory provisions of section 168 of the Insurance Law. In such cases where there is a mortgagee clause and liability thereunder to the mortgagee on the part of the insurance company but no liability by it to the mortgagor or owner, the insurance company is entitled to be subrogated to the rights of the mortgagee against the mortgagor or owner. (*Barile* v. *Wright*, 256 N. Y. 1, 5; *Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141; *Ulster County Sav. Institution* v. *Leake*, 73 N. Y. 161, 166; *Springfield F. & M. Ins. Co.* v. *Allen*, 43 N. Y. 389; *Foster* v. *Van Reed*, 70 N. Y. 19, 26; *Phœnix Ins. Co.* v. *Floyd*, 19 Hun, 287.) It has been so held even in the absence of a clause similar to our statutory mortgagee clause. (*First National Bank* v. *Springfield F. & M. Ins. Co.*, 104 Kan. 278.)

In the instant case while we are dealing with an automobile rather than property insured against fire under the " standard fire insurance policy of the State of New York " (Ins. Law, § 168), the reason for permitting subrogation by the insurance company to the rights of the vendor as against the conditional vendee of the chattel remains the same. We have here a contract of insurance which binds the insurance company only in so far as Autocar is concerned. Neither Fields nor Lake at the time of the fire nor at the time of the

assignment of the conditional sale contract was interested in the insurance contract as an assured. By the repossession and sale of the tractor there was established an ascertained valid assignable debt running from Fields and Lake to Autocar. A stranger to Fields and Lake could have purchased the account from Autocar and taken an assignment of it. Fields had become a stranger to the insurance contract when the policy of insurance was cancelled as to him. Lake had never occupied any position toward the insurance company other than that of a stranger.

Lake was not a party to the insurance contract and thus no contract providing for subrogation was made and none could have been made therein as to him. He had obligated himself to pay for an automobile. He had not paid. There was a debt owing by him to Autocar. That debt was assignable. When the insurance company paid Autocar for the peril insured against, Lake was in no position to claim that his debt had been paid for him, that he had been enriched to that amount, and his obligation to Autocar cancelled. It was to meet such a situation that equity created and applies the doctrine of subrogation or equitable assignment. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137; *American Central Ins. Co.* v. *Weller*, 106 Ore. 494.) In *Pittsburgh-Westmoreland Coal Co.* v. *Kerr* (*supra*), at page 143, we said (CHASE, J.): " The right of subrogation or of equitable assignment is not founded upon contract nor upon the absence of contract, but is founded upon the facts and circumstances of a particular case and upon principles of natural justice, and generally where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in place of a creditor such person will be so substituted. (*Crippen* v. *Chappel*, 35 Kansas, 495.)"

In *American Central Ins. Co.* v. *Weller* (*supra*), it was said: " The doctrine of subrogation has long been an established branch of equity jurisprudence. It does not owe its origin to statute or custom but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it.

It rests upon the maxim that no one should be enriched by another's loss and may be invoked wherever justice demands its application, in opposition to the technical rules of law."

While the right of the insurance company to subrogation against Lake appears more clearly on the facts it does not differ on principle from its right to subrogation against Fields. That which Fields contracted to do was to purchase and pay for an automobile. He purchased but did not pay for it. He had no insurance when the automobile burned. There is no reason why the insurance money covering the ownership of Autocar should be used to pay for the interest of Fields therein which he did not see fit to keep insured.

The judgments of the Appellate Division should be reversed with costs and motions to dismiss the counter-claim denied.

LOUGHRAN, FINCH, RIPPEY, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which LEHMAN, Ch. J., and LEWIS, J., concur.

Judgments affirmed. (See 290 N. Y. 872.)