STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
APPELLANT, V. LARRY McCARTY ET AL., APPELLEES.

127 N. W. 2d 284

Filed March 27, 1964.    No. 35620.

Sarah Jane Cunningham, for appellant.

Russell & Colfer, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is a suit upon a conditional sale contract brought by State Farm Mutual Automobile Insurance Company as plaintiff against Larry McCarty and Marilyn McCarty. A jury was waived and the action tried to the court. The trial court found generally for the defendants and dismissed the action. The plaintiff's motion for new trial was overruled and it has appealed.

There is no dispute concerning the facts. In 1959 the defendants purchased a 1957 Chevrolet automobile upon a contract of conditional sale. The contract was then sold and assigned to the First National Bank of McCook, Nebraska. At the defendants' request, a policy of automobile insurance issued by the plaintiff was transferred from their former automobile to the 1957 Chevrolet.

The insurance policy contained a provision that any loss payable under the collision coverage of the policy

was payable to the First National Bank as its interest might appear. The policy further provided that as to the bank the insurance "shall not be invalidated by any act or negligence of the mortgagor or owner * * * until after notice of termination of the policy shall be given to such * * * conditional vendor * * * or assignee stating when not less than ten days thereafter such termination shall be effective; * * *."

The policy expired by its own terms on August 6, 1959, when the defendants failed to pay the required semiannual premium before that date. The plaintiff failed to notify the bank that the policy had terminated. On August 20, 1959, the defendants' automobile was damaged when it collided with a power pole. The automobile was sold for salvage and the proceeds applied to the conditional sale contract. This left a balance due the bank of $415.24 which the plaintiff paid to the bank on September 19, 1959. The bank then assigned the conditional sale contract to the plaintiff.

The plaintiff's theory of the case is that upon payment to the bank of the balance due on the conditional sale contract, the plaintiff became subrogated to the rights of the bank against the defendants under the contract. In support of its contention the plaintiff cites First Nat. Bank of Elk City v. Springfield Fire & Marine Ins. Co., 104 Kan. 278, 178 P. 413.

The defendants contend that the payment by the plaintiff to the bank was made pursuant to the terms of the insurance policy; that although the policy had expired so far as the rights of the defendants were concerned, the policy was still in effect as to the bank; and that the plaintiff could gain no rights against the defendants by merely doing that which it had agreed to do at the time the policy was issued. In support of their contention the defendants cite Fields v. Western Millers Mutual Fire Ins. Co., 290 N. Y. 209, 48 N. E. 2d 489, 146 A. L. R. 434.

In the majority opinion in the Fields case the New

York Court of Appeals observed that an insurer may contract for subrogation and that such a contract will be enforced. But in the absence of a provision in the policy that upon payment of the loss the insurer shall become subrogated to the debt, the payment of the loss merely satisfies the obligation of the insurer under the policy. The court said: "This rule of law that a policy taken out by an owner to protect his mortgagee as well as himself continues to protect the owner in the event of a payment to the mortgagee, unless otherwise provided, is based on the essential nature of the transaction. Such a policy, furnished to the mortgagee, is not a separate insurance of the debt, but is a separate security for the debt. * * *

"Of course, the insurer may contract for subrogation and such a contract will be enforced. And the insurer may go further and cover by appropriate language the exact situation which here arose, that is, a default by the owner-insured leaving the mortgagee's rights unimpaired. The 'standard fire insurance policy' above alluded to contains a paragraph dealing with that contingency and providing in terms that in such a case the insurer, on paying the loss, becomes entitled to subrogation and to an assignment of the mortgage debt. Such clauses have been in use for many years in this State. They 'make the policy operate as an insurance of the mortgagors and the mortgagees separately, and * * * give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts.' (Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141, 154.) The provision for subrogation, found as a part of such a mortgage clause, is a benefit from mortgagee to insurer, in consideration of the added protection afforded to the former by the clause (Hastings case, same page). Whatever be the law in other jurisdictions, it will be found that in every case in this State where subrogation has

been allowed to an insurer who pays the mortgagee despite the insurer's non-liability to the mortgagor, such subrogation is based on specific language in the policy to that effect. (See Barile v. Wright, 256 N. Y. 1, 5.) There was, we repeat, no such language here. The policy was a simple one insuring the owner and the mortgagee as their interests might appear. It had no language calculated or sufficient to turn it into some other kind of contract with the mortgagee, if the mortgagor should fail to pay the premium. 'The contract of insurance has its full effect between the parties by payment of the damage, and cannot survive to assume a new face against a third person.' (Shotwell v. Jefferson Ins. Co., 5 Bosworth, 247, 264.) If the insurer wanted a subrogation clause, it knew how to require one. 'The insurer makes it part of his contract that he shall have these privileges, and in that view undertakes the risk and graduates his premium. There was no such stipulation here.' (Shotwell case supra, p. 264.) There being no right to subrogation, the insurer, 'upon payment of the indemnity promised, simply performs his contract' (Clinton v. Hope Ins. Co., 45 N. Y. 454, 467), and that is the end of the whole thing.

"We are told, however, that this is the kind of case where subrogation may be based not upon express agreement but upon principles of natural justice which, frowning upon unjust enrichments, require that one who furnishes money to pay a debt (such as a surety) should be substituted for the creditor and should acquire the latter's rights. But the insurer here paid out its money because it was an insurer and because there had been loss and damage from a peril insured against. The insurer was not paying off the Autocar Company's mortgage as surety for Fields and Lake. The obligation it satisfied was its own obligation under a contract issued to, and insuring, Fields."

We think that the better rule is the one adopted by the New York court. We hold that the plaintiff was

not entitled to be subrogated to the debt of the defendants in the absence of a specific provision to that effect in the policy, and upon payment of the loss to the bank, the plaintiff acquired no rights by the assignment of the contract to it.

The policy issued by the plaintiff in this case contained a provision that upon payment under the collision coverage of the policy "the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them." This provision relates to the right of recovery which the defendants might have against third parties and has no reference to the rights which the bank had against the defendants. Fields v. Western Millers Mutual Fire Ins. Co., *supra.*

The judgment of the district court is correct and it is affirmed.

AFFIRMED.