Frank J. Blangiardo, J.
This case has been submitted to the court on an agreed statement of facts.
Briefly stated, the facts are as follows:
Plaintiff financed the purchase of a car for one Frank Silvestri, the named insured herein. In accordance with the terms of the financing arrangement, the insured was to procure an insurance policy containing fire, theft and collision coverage, naming the plaintiff as loss payee. Defendant insurer issued a binder, effective June 27, 1966 to June 27, 1967, for the coverage requested and in so doing, named the plaintiff as the loss payee. The following month, defendant canceled the policy, effective July 21,1966, by notice to the insured only.
The policy being silent as to notice to the loss payee, no such notice was communicated to the plaintiff. Subsequent to July 21, 1966, a loss occurred for which the plaintiff now seeks to recover. It has been stipulated between the parties that at the time of the notice of cancellation, the plaintiff had an interest in the insured automobile, consisting of an unpaid balance under the retail installment contract.
The sole question to be determined by the court is whether or not, under the facts presented herein, the binder can be canceled as against the plaintiff loss payee by notice to the insured alone.
*521 This case is seemingly one of first impression involving the right, if any, of a loss payee under an automobile insurance policy, absent any provision therein, concerning a notice of cancellation to a loss payee. The court has been unable to find any reported case dealing precisely with the question presented.
Plaintiff contends that her position under the policy was not affected by defendant’s notice to the insured, claiming that as a result of the loss payee clause a separate contract of insurance was created between her and the insurer, putting the insurer under an obligation to give her notice of any cancellation.
To support this contention, plaintiff cites several cases, mostly dealing with fire insurance policies. The law is well settled regarding the significance of a loss payable clause under a fire insurance policy.
As a general rule, in the absence of a mortgagee clause in the policy, a mortgagee is subject to any defense available against the mortgagor. However, the inclusion of a mortgagee clause creates a separate and independent insurance of the mortgagee’s interest (Nor-shire Assoc. v. Commercial Union Ins. Co., 25 A D 2d 868; Syracuse Sav. Bank v. Yorkshire Ins. Co., 301 N. Y. 403; Goldstein v. National Liberty Ins. Co., 256 N. Y. 26). No problem arises regarding notice to the loss payee under a fire policy, containing a standard mortgagee clause, since notice is provided for in the clause. (Insurance Law, § 168.)
However, none of the cases cited involve notice of cancellation to the loss payee in the absence of the standard mortgagee clause. Nor are the facts closely parallel, since automobile policies do not generally contain standard mortgagee clauses. Therefore, the cases cited cannot be dispositive of the issue herein.
Insurance is a personal contract between the insurer and the named insured for the monetary indemnification and protection of the interest of the insured against a particular peril. However, if it is desired that a loss should be payable to someone other than the insured, such provision should be included in the policy. The insertion of such a clause would amount to recognition by the insurer of such person’s interest. (5A Appleman, Insurance Law and Practice, § 3335.)
The court in resolving the issue before it was guided by the following cases: Matter of Largo Prods. (Cohen) (8 Misc 2d 594); East Side Garage v. New Brunswick Fire Ins. Co. (198 App. Div. 408); Fields v. Western Millers Mut. Fire Ins. Co. (290 N. Y. 209); Jefferson Credit Corp. v. Fulton Fire Ins. Co. (N. Y. L. J., March 7,1952, p. 934, col. 1).
*522 In the Largo case, National Cash Register Co., sold a cash register to Largo pursuant to a conditional sales contract. Title was to remain in National until final payment. Largo never made any payments, and on March 1,1957, Largo was in default, entitling National to repossess.
On May 6, 1957, the machine was stolen from Largo’s place of business. On or about May 31, 1957, Largo assigned for the benefit of creditors. At the time the machine was stolen, Largo carried a burglary insurance policy. National moved for an order requiring Largo’s assignee to deliver all of his interest in the policy, carried by Largo, on the date the adding machine was stolen.
The assignee defended the motion by arguing that to afford National the relief it seeks would be to grant a preference to National at the expense of the other creditors.
The court there held that the holder of a mortgage or other lien on property has no right to the proceeds of insurance on a policy taken out by the owner and made payable to himself, where such owner has not bound himself to carry insurance. The bill of sale between the parties contained no reference to insurance.
It has been held that where an assured agrees to insure for the protection and indemnification of a third person having an interest in the subject of insurance, such third person has an equitable lien, in case of loss, upon the money due under the policy to the extent of such interest. (See Cromwell v. Brooklyn Fire Ins. Co., 44 N. Y. 42.) The holding in the Cromwell case, although dealing with fire insurance, is referable to any other type of insurance for the protection of property.
In the case of East Side Garage v. New Brunswick Fire Ins. Co. (198 App. Div. 408, supra) an action was brought on a policy issued by the defendant insurer to the defendant Mason on an automobile owned by him, insuring against loss by fire or theft. The automobile was destroyed by fire after issuance of the policy. The plaintiff had a claim against Mason for the unpaid purchase price of the automobile and the policy contained a provision that a loss, if any, should be payable to the plaintiff.
Other clauses in the policy were to the effect that no agent of the company should have the authority to waive any term unless in writing and attached to the policy; and that the policy was to be null and void if the automobile was used for hire. It was so used, and the policy was thereby forfeited unless the insurer waived the provision against such use or was estopped from asserting same. Plaintiff notified agents of the insurer that the automobile was being used for hire and was told that *523 they would inform the company and advise the plaintiff if the company objected. Until then, they stated that the policy would remain in full force and effect. Belying on such understanding, plaintiff assumed the policy was still in effect. At no time prior to the destruction of the automobile, was plaintiff either advised that the company objected to such use or received noticed of any cancellation.
The appellate court, after considering only the sufficiency of the complaint, reversed and granted a new trial on the grounds that the complaint was sufficient to spell out a possible waiver or estoppel against the insurer. Of more importance to this court is that the appellate court in dictum made the following observation (p. 413): “ a cancellation of the policy and return of the unearned premium or at least notice by the respondent [insurer] that it repudiated its agents’ assumption of power would have put the plaintiff on its guard and enabled it to protect itself by other insurance.”
In the case of Fields v. Western Millers Mut. Fire Ins. Co. (290 N. Y. 209) the court was concerned only with the question of the sufficiency of a counterclaim. The underlying facts were very similar to the case at bar, with one notable exception. There, the loss payee, pursuant to a provision in the policy, was to receive written notice of any cancellation. The insured failed to pay his premium and the company notified him that it was canceling the policy but neglected to apprise the loss payee as provided for in the policy.
The insurer made payment to the loss payee, which the court ruled satisfied the debt of the insured. The insurer claimed that it was inequitable for the insured (and his comaker) to benefit from such payment, thereby extinguishing the debt. To this argument, the court made the following remark (p. 216): “ as to the equities of the situation, it was the insurer’s own delinquency in failing to notify the vendor of the vendee’s failure to pay the premium that was the proximate cause of the insurer’s difficulties. Had the insurer given that notice, one of two things would have thereupon happened. Either the vendor would have paid the premium and thus kept both vendor and vendee covered, or the insurer would have been relieved from any liability to either.” What the court there would have said had the policy been mute as to the notice of cancellation to the loss payee, would be mere conjecture and this court will not so speculate.
A very significant case is Jefferson Credit Corp. v. Fulton Fire Ins. Co. (decided May 9, 1951 by Judge Gerald P. Culkin and affirmed by the Appellate Term, 1st Dept., N. Y. L. J., March 7, *524 1952, p. 934, col. 1 (supra). In this case, the insurer issued a policy, including fire, theft and collision coverage, to the named insured, Maggie J. Hampton, containing a loss payable clause and naming the plaintiff as loss payee. The insured, during the term of the policy, conveyed her interest in the automobile and the transferee was not a named insured by indorsement on the policy. Subsequently, there was a loss for which the plaintiff sought to recover. The defendant argued that the named insured had no interest and therefore could have no claim against the company. Consequently, the loss payee could have none either, since its interest was solely derivative through that of the named insured.
On the other hand, plaintiff contended that the loss payable clause in the policy operated to create a separate and distinct contract of insurance, as if the policy had been issued in the plaintiff’s name for its own and exclusive benefit.
On plaintiff’s motion for summary judgment, the court rendered the following decision: “ I find that the loss payee clause in the policy in question creates a separate, distinct and independent insurance of the mortgagee’s interest and such clause remains in force and effect, all other factors remaining constant, for such period as the mortgagee has an independent interest in the chattel. The motion of the plaintiff striking out the answer and for summary judgment is therefore granted ”.
This court will now consider the arguments set forth in defendant’s memorandum of law. Defendant’s first contention is that since the policy was not delivered to the plaintiff, it never became effective. It should he noted however that, on page 2 of the stipulated facts, that defendant did issue a hinder for such coverage naming the plaintiff as loss payee.
To support this contention, defendant cites: Jackson v. Bard (4 Johns. 230) and Millar v. New Amsterdam Cas. Co. (248 App. Div. 272).
The Jackson case deals with adverse possession and should be confined to its own facts. The Millar case concerns a failure of delivery of a policy to the named insured, and as such, has no bearing on the facts in the case at bar.
This court can find no authority to support defendant’s contention, and further, is of the opinion that there is no legal requirement that the policy be delivered to the loss payee. The named insured and not the loss payee is the insured under this type of policy and delivery of the policy need only be made to the insured. However, it should be recognized that when a payee is named in the policy, he too, is also insured to the extent *525 of his interest (5A Appleman, Insurance Law and Practice, § 3335).
Defendant’s next argument is that plaintiff’s interest is not identified as that of a mortgagee. It is stated on page 3 of the stipulated facts that: “ At the time of the notice of cancellation the plaintiff loss payee had an interest in the automobile insured, consisting of an unpaid balance on the retail installment contract under which the car insured was financed. ”
The court does not attach any significance to the fact that the word “ mortgagee ” is not used to describe plaintiff’s interest. The interest of the plaintiff is of such a sufficient nature so as to warrant protection under the policy. Under article 9 of the Personal Property Law, entitled “ Motor Vehicle Retail Instalment Sales Act ’ ’, in subdivision 5 of section 301, the interest of the retail seller is described as follows: “ ‘ Retail instalment contract ’ or 1 contract ’ means an agreement, entered into in this state, pursuant to which the title to, the property or a security interest in or a lien upon a motor vehicle, which is the subject matter of a retail instalment sale, is retained or taken by a retail seller from a retail buyer as security, in whole or in part, for the buyer’s obligation.”
In Fields v. Western Millers Mut. Fire Ins. Co. (290 N. Y. 209, supra) the court stated that it would use the terms “ conditional vendor ” and “ mortgagee ” interchangeably, since the rules of law examined are applicable to both. In that case, as here, the loss payable clause contained no reference to the nature of the loss payee’s interest. To the same extent, the court in the Largo case (8 Misc 2d 594, supra), used the terms “ mortgagee ” and “ lien ” holder interchangeably.
After due consideration of the applicable law and cases cited herein, this court now holds that under an automobile policy, containing a loss payable clause, and in the absence of any provision requiring notice of cancellation to the loss payee, a duty is created on the part of the insurer to notify such loss payee in the event of cancellation of the policy. This, the court finds does not impose an undue burden upon the insurer, and would be the most fair and practical course of conduct for the insurer to take under the circumstances.
The question of law submitted to this court has been resolved in favor of the plaintiff. The remaining issues as to the happening of events, amount of damage, etc., are to be determined at a trial to be held on February 22,1971, Trial Term, Part 17.