HOME INSURANCE CO. *vs*. EARL W. BISHOP.

Penobscot.   Opinion, October 2, 1943.

*A. M. Rudman,* for the plaintiff.

*Arthur L. Thayer,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J.   This is an action upon a negotiable promissory note brought by the plaintiff as indorsee against the defendant as indorser before delivery of the note to the payee. Hearing was before the presiding Justice without a jury. The facts were not in dispute. The defendant relied solely upon the contention set up in his pleadings that the plaintiff

"is not a holder in due course of the note declared on, in-so-far as the defendant is concerned."

The presiding Justice sustained this contention and rendered judgment for the defendant. The case comes forward upon exceptions to this ruling.

On July 13, 1940 the defendant, Earl W. Bishop, sold to Byron and Annie O'Riley an automobile and received a partial payment. The remainder of the purchase price was provided for by a conditional sale contract and by note of the condi-

tional vendees for $210.48, payable in twelve monthly installments. The note was given directly to Darling Motor Co., Inc. It was also indorsed in blank by the defendant, Bishop, before delivery.

The payee of the note secured an insurance policy to be issued by the plaintiff Company, protecting the conditional vendees and any holder of the note from loss by fire. The amount of the premium paid by the payee was included in the note as a part of the debt of the conditional vendees. The rights of the Darling Motor Co., Inc. in the conditional sale contract were then assigned by it to the Commercial Credit Corporation and the note was also transferred by indorsement.

Shortly after these transactions, the automobile was intentionally destroyed by fire by the O'Rileys, and no part of the insurance was paid to them because their own tortious acts created a forfeiture of their rights. The presiding Justice found that

> "The Home Insurance Company did pay, by virtue of its contract, to Commercial Credit Corporation 'as its interest appeared' the balance due on the note, viz. $150."

Upon receiving this payment, the Commercial Credit Corporation indorsed the note without recourse and delivered it to the plaintiff Insurance Company, together with formal assignment of all its right, title and interest in the conditional sale contract.

Upon this state of facts, the presiding Justice ruled

> "The plaintiff Insurance Co. is entitled to be subrogated to all the rights of the mortgagee (conditional sale vendor) as against the mortgagors (the O'Rileys as conditional sale vendees). It has no claim, however, against the defendant as endorser, under the circumstances of this case. . . . My interpretation of the Uniform Negotiable Instrument Act renders it necessary for me

to render judgment against the contentions of the plaintiff."

The defendant, Bishop, signed the note for the accommodation of the makers. By his indorsement before delivery, he became an irregular indorser and his liability as such is defined in R. S., c. 164, § 64 (N. I. L.) , which, so far as pertinent to this case, reads as follows:

"Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery he is liable as indorser, in accordance with the following rules:

(1.) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties."

Thus is presented the sole issue, whether under these facts the plaintiff is a holder in due course of the note in suit so far as the present defendant is concerned.

The definition of a holder in due course, is found in R. S., c. 164, § 52, as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

(1.) That it is complete and regular upon its face;

(2.) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

(3.) That he took it in good faith and for value;

(4.) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The determination of whether the present plaintiff was a holder for value depends upon the application of the doctrine

of subrogation. This principle is recognized by the ruling of the presiding Justice that the plaintiff is entitled to the right of subrogation, which he limited, however, to recourse against the makers primarily liable upon the note. The plaintiff maintains that payment of the amount remaining unpaid on the note, though made for the purpose of discharging its obligation as insurer of the property for which the note was given, entitled the Insurance Company to be subrogated to the rights of the previous holder against all prior parties to the instrument.

The right of subrogation may arise by contract or by operation of law. The insurance policy in this case, while not incorporated in the record, is according to the findings of the presiding Justice, "admitted to be in usual form to protect the O'Rileys and the holder of the note with his accompanying conditional sale contract." Our statute, R. S., c. 60 § 4, provides that:

"No fire insurance company shall issue fire insurance policies on property in this state, other than those of the standard form."

with certain modifications not here of concern. This standard form is found in § 5 of the Act and contains a subrogation clause in which is included the provision that

" . . . whenever this company shall be liable to a mortgagee for any sum for loss under this policy, for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay to the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the companies interested, upon such payment, the said mortgage, together with the note and debt thereby secured."

It might be claimed, however, that this provision was without application to insurance effected upon personal property, as the provision quoted is part of a paragraph which begins:

"If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate;"

It is not necessary to determine whether the policy provision is thus limited to insured real estate, because the right of subrogation as stated in the policy is essentially the same as that which arises by operation of law under the circumstances of this case.

In *Leavitt* v. *Railway Co.*, 90 Me., 153 at 160, (37 A. 886), our Court said:

" . . . an insurer who has paid a loss for which another is responsible, either by statute or at common law, is subrogated to any claim that the insured had against the person whose tortious act caused the injury, or who for any other reason is liable therefor."

It appears to be the reasoning of the Court below that the makers of the note, who are primarily liable thereon, by their tortious act in burning the automobile, caused the loss; that their indorser, the defendant, was free from fault, and the doctrine of subrogation should not be extended to include an action against him, but should be restricted to any one who is responsible for the wrong.

Yet our Court has said in *Stevens* v. *King*, 84 Me., 291, 24 A. 850, 851, as to the doctrine of subrogation:

"It ignores the form and looks to the substance. It construes payment to be purchase and purchase to be payment, as justice may demand. It substitutes one person for another or property for property."

If the Insurance Company is substituted for the mortgagee and in legal effect has purchased its rights, then it follows that it is entitled to the mortgage and the note secured thereby as

a holder for value, with all the rights incident thereto. In other words, the Insurance Company is substituted for the mortgagee and is entitled to the securities held by it.

In *Leavitt* v. *Railway Co.*, supra, the Court quotes from *Jackson Co.* v. *Bolyston Mutual Ins. Co.*, 139 Mass., 508, 2 N. E. 103, 104, 52 Am. Rep. 728, in which it was held that:

"Subrogation is the substitution of one person in place of another, whether as a creditor or as the possesser of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. This right does not necessarily depend upon contract, but grows out of the relation which two parties sustain to each other."

The rule is stated thus in 25 R. C. L., Subrogation, § 10:

"The right of subrogation is not restricted to the remedies which the creditor had against the principal debtor but extends to all the remedies which he had against the principal and others liable for the debt." Citing *American Bonding Co.* v. *National Mechanics Bank,* 97 Md., 598, 55 A. 395, 99 A. S. R. 466 and note. See also 13 Ann. Cas. 429.

Subrogation is an equitable principle. The makers of the note, by burning property on which there was insurance sufficient to cover its value, did not thereby secure immunity from payment of their note. Neither did the defendant, who indorsed for their accommodation. Though technically an irregular indorser and entitled to demand and notice of dishonor, which was given in this case, he is an indorser with all that term implies. *Ingalls* v. *Marston,* 121 Me., 182, 116 A. 216. His obligation on the note is that

"on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be

dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it." R. S., c. 164, 166.

It is the opinion of the Court that this plaintiff is a holder for value and the entry will be

*Exceptions sustained.*