In the Matter of FUTURE MANUFAC-
TURING COOPERATIVE, Inc., a
corporation, Bankrupt.
No. 46033.

United States District Court
N. D. California, S. D.
Aug. 5, 1958.

Shapro & Rothschild, Daniel R. Aronson, Jr., James M. Conners, San Francisco, Cal., for trustee.

M. M. Smith, Hauerken, St. Clair & Viadro, San Francisco, Cal., for Scatena York Co., claimant and petitioner.

GOODMAN, Chief Judge.

The Scatena York Company petitions for review of an order of the Referee in Bankruptcy sustaining objections by the trustee of the bankrupt estate to proof of a claim which it filed against the estate. The claim of Scatena York is for $17,654.88 allegedly owing on the purchase price of refrigeration equipment sold to the bankrupt under a conditional sales contract. The contract provided that the bankrupt should insure the equipment against fire in favor of Scatena York, but that destruction of the equipment should not relieve the bankrupt from liability for the full purchase price. The bankrupt failed to insure the equipment. On its own initiative, Scatena York purchased a fire policy insuring its own interest.

When $17,654.88 of the purchase price was still unpaid, the equipment was destroyed by fire without fault on the part of the bankrupt. Scatena York recovered $810 in salvage. It was paid $13,244.20 on its fire insurance policy. The trustee objected to its claim against the bankrupt estate for the $17,654.88 owing on the purchase price of the equipment, on the ground that the claim should be reduced by the amount received from salvage and the fire policy. At the hearing upon the trustee's objections, Scatena York conceded that the claim should be reduced by the $810 salvage. But, it urged that the claim could not properly be

reduced by the amount recovered on its fire policy because the bankrupt was not a party to the insurance contract and because the policy provided that the insurer should be subrogated to Scatena's rights against the bankrupt.

The Referee found that Scatena York had received payment on account of its claim in the sum of $13,244.20 from the proceeds of it insurance policy, plus the sum of $810 from salvage. He further found that neither Scatena York nor its insurer was entitled by virtue of the insurer's right of subrogation, to proceed againt the bankrupt estate for the $13,244.20 paid by the insurer on the fire policy. He therefore sustained the objections of the trustee and ordered the claim of Scatena York reduced by the amount it had recovered from salvage and its fire policy, and allowed it in the sum of $3,600.68. He further ordered that upon satisfactory proof of the amount paid by Scatena York as premiums on the fire policy, the allowed claim would be augmented by that amount.

In his certificate upon the petition for review, the Referee states the question tendered by the trustee's objections to proof of the claim of Scatena York as follows: "Where, under a contract of sale, the vendee is to procure insurance for the vendor and doesn't, is the vendee liable to the vendor or to the vendor's insurance company where the property is destroyed without fault?" He explains that his order was based on the conclusion that the vendor's insurer had no claim against the vendee for breach of his obligation to obtain insurance and that the insurance proceeds received by the vendor constituted a pro tanto mitigation of the vendor's damages for such breach. In support of this conclusion he refers to cases dealing with the measure of damages for breach of contracts to obtain insurance.

It is thus apparent that the Referee's decision was based upon an erroneous view of the question before the Court. The claim filed by Scatena York is not for damages for breach of the bankrupt's agreement to obtain insurance. All that is claimed is the balance allegedly owing by the bankrupt under the conditional sales contract on the purchase price of the refrigeration equipment.

What must be determined is the effect of the payment received by Scatena York under its fire policy upon its contractual right to recover the balance of the purchase price from the bankrupt.[1] This determination requires an appraisal of the interdependent rights and obligations of Scatena York, its insurer, and the bankrupt vendee.

At the outset, consideration must be given to the claim that the fire policy itself gave the insurer a right of subrogation to Scatena York's contractual right against the bankrupt. The subrogation clause in the fire policy provides as follows: "In the event of any payment under this policy the Company shall be subrogated to all the Assured's rights of recovery therefor against any person or organization and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Assured shall do nothing after loss to prejudice such rights." This clause by its terms merely subrogates the insurer to any right of the assured to recover for the fire loss for which payment is made under the policy. It does not purport to subrogate the insurer to collateral rights of the assured which may indirectly diminish the

[1.] It is contended in the memoranda submitted in support of the petition for review that, since the Referee took no testimony at the hearing of the Trustee's objections to proof of the claim of Scatena York, there is no factual record permitting consideration of the fact that Scatena York was paid by its insurer for the loss of its interest in the refrigeration equipment. But, at the hearing before the Referee counsel for Scatena York and its insurer acquiesced in the statement of facts made by counsel for the trustee and it was obviously understood by all parties that the matter was submitted to the Referee for decision upon an agreed statement of facts, in so far as such facts were found to be relevant.

loss to the assured. Cf. Fields v. Western Millers Mut. Fire Ins. Co., 1943, 290 N.Y. 209, 48 N.E.2d 489, 492, 146 A.L.R. 434. Thus any right the insurer may have to be subrogated to Scatena York's rights against the bankrupt can only arise by operation of law independent of any agreement between the insurer and Scatena York.

In the absence of any controlling agreement, there are three ways in which the law might adjust the rights and obligations of the vendor, Scatena York, its insurer, and the bankrupt vendee. (1) The vendor might be permitted to recover and retain both the full purchase price of the insured goods and the insurance proceeds. (2) The vendee might be given the benefit of the vendor's insurance and the vendor allowed to recover the purchase price less the insurance proceeds. (3) The insurer might be subrogated to the vendor's rights against the vendee to the extent of the insurance proceeds paid the vendor.

None of these three alternatives is free from objection. The first contravenes the public policy against a double recovery as well as that against placing an insured in a position where he might be tempted to cause a loss or be careless to prevent it. The second is inconsistent with the established concept of an insurance contract as a personal agreement between insurer and assured, and to some extent with the principle that an insurer is entitled to select its assured and determine its own moral risk. The third gives the insurer a windfall, if, as appears to be normally the case, its rates are not fixed in anticipation of such a collateral recovery.[2]

Precedent does not provide a clear-cut guide to the choice of these alternatives.[3] It is the universal rule that an insurer who has indemnified his assured for a property loss is subrogated to the assured's rights against any person wrongfully causing the loss. This is true whether the assured's cause of action against the wrongdoer is in tort or contract.[4] But, there is no such general agreement in decisional law as to the right of the insurer to be subrogated to collateral rights which the assured may have against persons who did not cause the loss.

In respect to certain types of collateral rights, the courts have generally favored giving the insurer a right of subrogation. Thus the prevailing rule is that an insurer upon indemnifying an insured mortgagee for the loss of his interest in destroyed mortgaged property is entitled to be subrogated to the mortgagee's right to enforce payment of the mortgagor's debt.[5] Shippers' insurers, upon payment for goods lost or damaged in transit, have usually been subrogated to the shippers' contractual rights against the carrier.[6] Insurers of leased property, upon paying the lessor for loss or damage to the property, are ordinarily subrogated to his rights against a lessee who has contracted to keep the property in good repair or to indemnify the lessor for loss or damage.[7]

**2.** See the discussion in Note, "Subrogation of the Insurer to Collateral Rights of the Insured," 28 Columbia Law Review 202 (1928) and King, "Subrogation Under Contracts Insuring Property," 30 Texas Law Review 62, 71 (1951).

**3.** For a detailed discussion of the authorities on the subject in addition to the sources cited in footnote 2 see, Campbell, "Non-Consensual Suretyship," 45 Yale Law Journal 69 (1935) and Langmaid, "Some Recent Subrogation Problems in the Law of Suretyship and Insurance," 47 Harvard Law Review 976 (1934).

**4.** See Note, 28 Columbia Law Review 202 (1928) and cases there cited; Campbell, supra, note 3 at 76.

**5.** See King, supra note 2 at 72. Langmaid. supra note 3 at 992; Campbell, supra, note 3 at 99.

**6.** See King, supra, note 2, at 78; Campbell, supra, note 3 at 79.

**7.** See Hartford Fire Insurance Co. v. Chicago Tunnel Terminal Co., 1956, 12 Ill. App.2d 539, 139 N.E.2d 770; F. H. Vahlsing, Inc., v. Hartford Fire Ins. Co., Tex.Civ.App.1937, 108 S.W.2d 947; Chicago, St. Louis and New Orleans Rail-

But, when an insured vendor has been indemnified by his insurer for the loss of property subject to a sales contract, the tendency has been to give the vendee the benefit of the vendor's insurance rather than to subrogate the insurer to the vendor's right to recover the purchase price from the vendee. The leading English cases of Rayner v. Preston, 18 Ch.D. 1 (1881) and Castellain v. Preston, 11 Q.B.D. 380 (1883) originally adopted the rule that a vendee of destroyed real property had no claim to the vendor's insurance because the insurance contract was a personal one between insurer and vendor, and that the insurer was subrogated to the vendor's right to the purchase price to the extent of the insurance paid. But, this rule was changed in 1922 by a statute providing that the vendee should have the benefit of the vendor's insurance.[8]

In the United States nearly all of the jurisdictions, in which the question has arisen, have given the vendee of destroyed real property the benefit of the vendor's insurance.[9] In Brownell v. Board of Education, 1925, 239 N.Y. 369, 146 N.E. 630, 37 A.L.R. 1319, the New York Court of Appeals denied the claim of a vendee to the benefits of the vendor's insurance. But, significantly in that case, the risk of loss was not on the vendee since the contract of sale permitted him to withdraw from the contract in the event of destruction of the property.

In the memoranda submitted in support of the petition for review, White v. Gilman, 1903, 138 Cal. 375, 71 P. 436 is cited as establishing the rule in California that a vendee of destroyed property may not have the benefit of the vendor's insurance. In that case the vendee contracted to buy a vacant lot for $215, and thereafter erected a dwelling on the lot. The vendor, on his own initiative, took out insurance on the dwelling and received $250 from the insurer when it was destroyed by fire. In a subsequent action by the vendee to compel conveyance of the lot, the court denied the vendee's claim that the insurance proceeds of $250 should be credited against $199 remaining unpaid on the purchase price of the lot. Thus White v. Gilman does not establish the rule to be applied when the property which is the subject of the sales contract is destroyed.

The California case most nearly in point is Kaufman v. All Persons, 3 Dist. 1911, 16 Cal.App. 388, 117 P. 586. In that case the owner of a building obtained a loan from a loan society and gave a deed of trust on the building as security. In accordance with the loan agreement he secured an insurance policy on the building payable to the loan society. Later he contracted to sell the building subject to the deed of trust. The vendee agreed to pay as the purchase price, a specified sum in installments to the vendor and to assume the vendor's indebted-

road Co. v. Pullman Southern Car Co., 1891, 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97; Darrell v. Tibbetts, L.R. 5 Q.B.D. 560 (1880). In the Vahlsing and Chicago Railroad cases, there were applicable subrogation clauses in the insurance policies. In some of these cases involving rights under leases, the courts have permitted a lessor who has been paid by his insurer to recover from the lessee without indicating whether the insurer can recover back the amount paid to the lessor. See e. g. Brewster v. Silverstein, Sup.1912, 133 N.Y.S. 473.

8. St. 12 & 13 Geo. V., c. 16, § 105: "Any money becoming payable after the date of any contract for sale of property under any policy of assurance in respect of any damage to or destruction of property included in such contract shall, on

completion of such contract, but subject to any stipulation to the contrary, be held or receivable by the vendor on behalf of the purchaser and paid by the vendor to the purchaser on completion of the sale or so soon thereafter as the same shall be received by the vendor."

9. See Note, "Right of Purchaser to Benefit of Insurance Taken Out by Seller or Vendor," L.R.A.1918D, 933; Note "Rights of Vendor and Purchaser Inter Se in Respect of Proceeds of Insurance," 1925, 37 A.L.R. 1324; 1926, 40 A.L.R. 607; 1927, 51 A.L.R. 929 and additional cases cited in A.L.R. Blue Book of Supplemental Decisions for Annotations; Note, 34 Yale Law Journal 87 (1924); Note, 25 Columbia Law Review 477 (1925); King, supra, note 2 at 77.

ness to the loan society and make the payments provided in the deed of trust. When the building was destroyed by fire, the insurer paid the face amount to the loan society. In a subsequent action by the vendee to establish title to the building site, the Court held that she was entitled to have the insurance proceeds received by the loan society applied against the vendor's indebtedness to the society which she had assumed as part of the purchase price of the realty.

There are few reported cases, and none in California, considering the respective rights of vendor, vendee, and the vendor's insurer when personal property subject to a conditional sales contract is destroyed. Automatic Sprinkler Corporation of America v. Robinson-Slagle Lumber Co., Inc., La.App.1933, 147 So. 542 appears to be the only case factually the same as the present one. In that case sprinklers had been sold pursuant to a conditional sales contract in which the vendee agreed to insure the sprinklers. The vendee failed to obtain insurance and the vendor insured its own interest. When the sprinklers were destroyed by fire, the insurer paid the value of the sprinklers to the vendor on condition that it should be reimbursed to the extent that the vendor should recover the purchase price from the vendee. In a suit by the vendor against the vendee for the purchase price, the Court held that the insurer was not subrogated to the rights of the vendor against the vendee in the absence of a provision in the policy to that effect and that the vendor was obliged to apply the money received from the insurer against the purchase price.

In Gillingham v. Phelps, 1940, 5 Wash. 2d 410, 105 P.2d 825, gaming equipment was sold pursuant to an oral agreement and possession was given to the vendee. The vendor then held a fire insurance policy on the equipment. Before a bill of sale was executed and the purchase price paid, the equipment was destroyed by fire. In a suit by the vendee against the vendor's insurer, the insurer paid the face amount of the policy into court, and it was held that such amount should

first be applied upon the balance due on the purchase price of the equipment and the remainder paid to the vendee.

In Cadillac Automobile Co. v. Fisher, 1934, 54 R.I. 264, 172 A. 393, an automobile was sold pursuant to a conditional sales contract in which the vendee agreed to maintain theft insurance payable both to the vendor and the vendee as their interests might appear, and the premium was included in the purchase price. Thereafter the insurer cancelled the vendee's interest in the policy. When the automobile was stolen, the insurer paid the vendor the amount then owing by the vendee on the purchase price on condition that it should be reimbursed to the extent that the vendor recovered the balance owing from the vendee. In a suit by the vendor against the vendee, the Court held the vendor was entitled to recover the balance owing on the purchase price.

In Home Insurance Co. v. Bishop, 1943, 140 Me. 72, 34 A.2d 22, the vendee of an automobile sold pursuant to a conditional sales contract gave his installment note for the purchase price. The payee of the note secured insurance on the automobile protecting the vendee and any holder of the note from loss by fire. Thereafter the vendee intentionally burned the automobile and thus forfeited his interest in the policy. The insurer paid the balance due on the vendee's note to an assignee of the note who endorsed the note to the insurer. In a suit by the insurer against a prior accommodation endorser of the note, the Court held the insurer was subrogated to the assured's rights against the accommodation endorser, and that endorser was not entitled to the benefits of the insurance even though he was in no way responsible for the destruction of the automobile.

In Interstate Ice & Power Corporation v. United States Fire Ins. Co., 1926, 243 N.Y. 95, 152 N.E. 476, ice-making machinery was sold pursuant to a conditional sales contract, and the vendor insured his interest in the machinery. The vendee defaulted in his payments on the purchase price and the vendor repos-

sessed the equipment. Shortly thereafter the equipment was burned to an extent that its value was reduced by more than the unpaid balance of the purchase price. In a suit by the vendor against his insurer, the Court awarded him a sum equal to the unpaid balance of the purchase price. By way of dicta, the Court added that the insurer upon payment of such amount would succeed by subrogation to the vendor's remedies against the vendee.

Thus the decisions involving the destruction of personal property subject to a contract of sale are about equally divided between those that give the vendee the benefit of the vendor's insurance and those that subrogate the vendor's insurer to the vendor's right to recover the purchase price from the vendee. But considering the cases dealing with real property and those dealing with personal property together, a substantial majority of jurisdictions favor giving the vendee the benefit of the vendor's insurance.

In the opinion of the Court, this course is the preferable one and the one that would be followed by the Supreme Court of California. It places the ultimate burden of the loss upon the insurer who has been compensated for insuring against such loss rather than upon the vendee who did not cause the loss. While a rule giving the vendee the benefit of the vendor's insurance may run counter to the normal concept of an insurance policy as a personal contract between the insurer and the assured, this theoretical objection does not weigh as heavily as the equitable considerations favoring the vendee.[10] In so far as the moral risk assumed by the insurer may be increased by such rule, the insurer, if it deems the vendee a poor moral risk, can protect itself by declining to issue the policy or by including a clause in the policy specifically subrogating it to the vendor's right to recover the purchase price from the vendee.

The order of the Referee reducing the claim of Scatena York by the amount it has recovered from salvage and from its fire policy and allowing it in the sum of $3,600.68 plus the amount paid as premiums on its fire policy is therefore affirmed.

10. See the discussion favoring this rule is King, supra note 2, at 78 and 82; Note, 28 Columbia Law Review 202, 205.