EASTERN RESTAURANT EQUIPMENT CO. INC. *vs.* GEORGE E.
TECCI & others.

Suffolk.    January 6, 1964. — March 4, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Subrogation.   Insurance,* Subrogation, Insurance for benefit of creditor.
*Sale,* Conditional sale.

Under a conditional sale contract of goods authorizing the vendor to insure
the goods for the benefit of the vendor and "to charge the cost of said
insurance to the purchaser," where it appeared that the purchaser did
not insure the goods against loss, that the vendor insured them for the
vendor's benefit to the extent of any unpaid balance due under the con-
tract at the time of loss but did not in fact charge the premium for such
insurance to the purchaser, that a fire completely destroyed the goods,
and that the insurer paid the balance then due under the contract and
received an assignment from the vendor of "all claims and demands . . .
arising from the loss," it was held, in the absence of proof of an explicit
subrogation agreement in the policy, that the purchaser's liability to pay
the premium on the insurance gave him rights equivalent to rights which
he would have had if he had actually paid the premium, that the vendor
was obligated to apply the insurance proceeds to the purchaser's debt
under the contract, and that such application extinguished the debt so
that the vendor had no claim against the purchaser to which the insurer
could be subrogated.

CONTRACT.    Writ in the Municipal Court of the City of
Boston dated April 5, 1960.

The action was heard by *Adlow,* C. J.

*James W. Kelleher* (*Daniel F. Leary* with him) for the
defendants.

*Edward O. Proctor, Jr.,* for the plaintiff.

CUTTER, J.    The defendants (the purchasers) are two
operators of a night club and the wife of each of them.    All
four defendants signed a conditional sale contract and a
promissory note (each dated November 4, 1957) for the pur-
chase and installation of certain restaurant furniture and
furnishings from the plaintiff (Eastern).    The contract and
note provided for payment of $8,277 in thirty-five monthly
instalments.    They were presented to Firestone & Co. Inc.
(Firestone) "to be financed."    Eastern executed an assign-

ment of the contract to Firestone and a guaranty of its performance. The contract provided that the "risk of loss . . . shall rest upon the purchaser, and no such loss . . . shall in any way diminish or discharge the liability of the purchaser on account of the total price . . .." The contract also contained a provision that the "purchaser agrees at his own expense to insure . . . [the] goods [covered by the contract] for the benefit of the vendor and his assigns as his interest may appear, against loss or damage, from any and all causes; but the vendor is expressly authorized to insure for the benefit of the vendor and his assigns as his interest may appear, *at the expense of the purchaser,* the said goods against loss or damage from any cause whatever; and the vendor *is authorized to charge the cost of said insurance to the purchaser*" (emphasis supplied).

The purchasers did not insure the goods. "Eastern maintains a continuing blanket insurance policy covering goods for which purchasers fail to . . . [obtain] insurance for the benefit of" Eastern. This policy (which does not appear in the record) "provides in the event of loss for payment to the assured or his assigns of . . . the unpaid balance of the account at the time of loss."[1] Eastern "did not at any time make claim upon the . . . [purchasers] for the cost of such insurance." One of the items of the price stated in the conditional sale contract was a "[f]inance [c]harge including insurance premiums if any" of $1,602.

Fifteen payments of $230 each (December, 1957, through February, 1959) were made pursuant to the contract. On February 23, 1959, a fire completely destroyed the goods. No further payments were made to Eastern on the contract or note.

Eastern notified its insurer, which paid Firestone $4,427, the unpaid balance remaining ($4,827) less $400 for unearned interest. Firestone's copy of the contract and note were marked "paid" by Firestone and returned to Eastern. Eastern executed a "subrogation receipt" for the benefit of

[1] Eastern reports to its insurer at the end of each month the total then current balance of its accounts receivable. A yearly premium is charged based on these reports. The yearly premium is not broken down with respect to individual accounts or periods of time.

its insurer, assigning to the insurer "all claims and demands . . . arising from" the loss.

This action was brought in the Municipal Court of the City of Boston for the benefit of the insurer to recover from the purchasers the balance due upon the contract and note. The case was heard upon a statement of agreed facts which meets the requirements of a case stated. The trial judge denied requests for rulings, although they had no standing. See *Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 551–552. In doing so he said, "I find that . . . [Eastern] elected to provide coverage on goods which secured [the] transaction. I rule that under the agreement . . . [the purchasers] became liable for the premium due on account of . . . [the] coverage." He also ruled that Eastern was obliged to apply the insurance proceeds to reduction of the debt. He ordered judgment for the purchasers.

Upon report, the Appellate Division vacated the order and ordered judgment for Eastern. The purchasers appealed.

The issue for decision is whether Eastern's insurer (which has paid a fire loss to the assignee of Eastern, a conditional vendor) is entitled to be subrogated to the claim of Eastern against the purchasers, (a) where insurance has been taken out by Eastern in an amount equal to its own interest in the goods sold; and (b) where, under the conditional sale agreement, Eastern may charge the premium for such insurance to the purchasers, but at the time of the loss had not done so. It does not appear whether the insurance policy expressly authorizes the subrogation of the insurer to claims of the vendor against the vendee upon payment of a fire loss, or, if there is such a provision, what its terms are. We thus have no occasion to consider what the effect of such a subrogation provision would be. Cf. *Allen* v. *Watertown Fire Ins. Co.* 132 Mass. 480, 483; *Stinchfield* v. *Milliken,* 71 Maine, 567, 572; Vance, Insurance (3d ed.) § 130, p. 775.

Insurance of the vendor's interest under a conditional sale contract is closely similar to insurance of a mortgagee's

interest in mortgaged property. See *Fields* v. *Western Millers Mut. Fire Ins. Co.* 290 N. Y. 209, 212; Richards, Insurance (5th ed.) § 192; Annotation, 146 A. L. R. 442, 443. See also Couch, Insurance (2d ed.) §§ 29:108–29:112. If a mortgagee insures his own interest in mortgaged property at his own expense, the mortgagor, who is not chargeable with the premiums, can claim no benefit from such insurance and, in case of loss, cannot insist upon having the insurance proceeds applied pro tanto upon the mortgage debt. See *White* v. *Brown*, 2 Cush. 412, 417; *Clark* v. *Wilson*, 103 Mass. 219, 220–221; Jones, Mortgages (8th ed.) § 515. Cf. *Graves* v. *Hampden Fire Ins. Co.* 10 Allen, 281, 283–285. Except in Massachusetts in situations discussed in some early cases (see *King* v. *State Mut. Fire Ins. Co.* 7 Cush, 1, 14) the insurer, having satisfied the loss, would ordinarily be subrogated to the mortgagee's rights against the mortgagor on the debt. See Jones, Mortgages (8th ed.) § 515, nn. 16, 17, § 516; Vance, Insurance (3d ed.) § 130, n. 5; Richards, Insurance (5th ed.) § 191, n. 8; Campbell, Non-Consensual Suretyship, 45 Yale L. J. 69, 99–100, n. 142. See also G. L. c. 175, § 99 (as amended through St. 1951, c. 478), prescribing a standard form of fire insurance contract containing certain subrogation provisions; *Tabbut* v. *American Ins. Co.* 185 Mass. 419, 421.

Different considerations must be taken into account when insurance is taken out by a mortgagee (or a conditional vendor) at the expense of a mortgagor (or of the purchasers under a conditional sale contract). In *King* v. *State Mut. Fire Ins. Co.* 7 Cush. 1, 5–7, Chief Justice Shaw discussed various questions which may arise among the insurer of a mortgagee's interest, a mortgagee, and a mortgagor, including one situation closely similar to that now before us. He said (at p. 6), "There is another case . . . where it is agreed at the time of the making of the mortgage, that the mortgagee may cause the property to be insured at the expense of the mortgagor, and that the premium shall be added to the principal and interest, as the debt to be paid on redemption. . . . Then, if a loss occurs before the debt is paid, the sum payable to the mortgagee is the proceeds

of a security furnished by the mortgagor, and then, by a general rule of law, applicable to the proceeds of all collateral security furnished by a debtor to his creditor, it goes in reduction of the debt. It is, in effect, a security furnished by the mortgagor; the money received under it is his money, and extinguishes his debt in the same manner as if paid by him.'' The opinion proceeds, ''In all these cases, the mortgagor pays the premium; the amount of insurance is a sum placed in the hands of the mortgagee, at the expense of the mortgagor, and as further collateral security for the debt . . . .'' The principle thus stated would logically lead to the view (see Jones, Mortgages [8th ed.] § 513, p. 668) that when ''insurance has been effected . . . [by the mortgagee] by the authority of the mortgagor, or at his expense, or . . . [in] circumstances that would make him chargeable with the premium, he . . . [should be] entitled to have the money paid on the policy [by the insurer] applied to the extinguishment of his debt.'' See *Holbrook* v. *American Ins. Co.* 1 Curtis 193, 199–200 (C. C. R. I.).

The purchasers here were grossly in default under their agreement at their ''expense to insure . . . [the goods] for the benefit of'' Eastern. They simply paid no attention to that plainly expressed obligation, and, now that a loss has occurred, seek to have the benefit of insurance protection prudently obtained by Eastern to guard against the likelihood of such breaches of contract by persons in the position of the purchasers. Nevertheless, under the conditional sale contract, the purchasers could have been charged with the premium, in accordance with their agreement.[2] If, under the authorities just cited, the purchasers' liability to pay the premium on Eastern's insurance is equivalent to paying the premiums, then (at least, in the absence of an explicit subrogation agreement in the policy, and no such agreement was established) the purchasers should be entitled to have

---

[2] We recognize that part of the price paid for the goods under the conditional sale contract was a finance charge ''including insurance premiums if any.'' There is, however, no affirmative indication in the record that the finance charge of $1,602 in fact included any amount toward the insurance premium on the blanket policy. We think that it makes no difference to the result that this was a blanket policy. The premium, on the facts, would seem to be susceptible of allocation to individual conditional sale contracts.

the insurance proceeds applied in reduction of the debt. If, as between them and Eastern, Eastern was bound so to apply the proceeds, then Eastern had no claim against the purchasers to which the insurer could be subrogated.

Eastern relies upon the case of *Le Doux* v. *Dettmering*, 316 Ill. App. 98, 109–111, as indicating that where the mortgagee has not charged to the mortgagors the premium for insuring the mortgagee's interest, and the mortgagors have not shown "that they contemplated assuming liability for any portion of it when the policy was procured or thereafter," then the mortgagee may elect to treat the insurance as procured only for its own benefit. The holding of the *Le Doux* case has been subjected to persuasive adverse criticism. See Rarrick, Right of Insurer to be Subrogated to the Rights of Mortgagee, 31 Ill. Bar J. 331, 333; King, Subrogation under Contracts Insuring Property, 30 Tex. L. Rev. 62, 75–76. See also Richards, Insurance (5th ed.) § 191, p. 669;[3] note 72 Harv. L. Rev. 1380.

We think that the liability of the purchasers to be charged for a proportionate part of the premium paid on Eastern's blanket policy should be treated as having the same consequences that would follow payment of the premium by the purchasers. Eastern, after a loss has occurred, should not be permitted then to decide not to charge the premium to the purchasers, thus preventing the purchasers from receiving the benefit of insurance, the premium for which Eastern could still require them to pay. Eastern's ability to charge the premium to the purchasers, until effectively and clearly disclaimed, we regard as sufficient to make the insurance policy and proceeds part of the security for the debt which in effect the purchasers have furnished, or are liable to furnish, and thus make it the equivalent of an interest within Chief Justice Shaw's language already quoted from the *King* case (7 Cush. 1, 5–7).

The insurance is to be taken as for the purchasers' bene-

---

[3] Other authorities discussing the question include, Couch, Insurance (2d ed.) §§ 29:89–29:93; Appleman, Insurance Law and Practice (1942 ed.) §§ 4071–4074, 4078–4079; Vance, Insurance (3d ed.) § 130, pp. 772–775; Glenn, Mortgages, §§ 27.4–27.5; Annotation 11 A. L. R. 1295. See *Capital Fire Ins. Co.* v. *Langhorne*, 146 F. 2d 237, 243–244 (8th Cir.).

fit as well as for Eastern's benefit, and the proceeds (in the absence of proof of a contrary subrogation provision in the policy) must be applied to reduction of the purchasers' debt. Cf. *Burlingame* v. *Goodspeed,* 153 Mass. 24, 26–27, where, in deciding that insurance obtained by the holder of a security interest (essentially a mortgagee) did not inure to the benefit of the debtor, the court pointed out that the insured holder had no authority to act for the debtor's administratrix "in procuring the insurance, and did not assume to do so. *He could not have looked to her for the premium*" (emphasis supplied). Here Eastern, by prior arrangement in the conditional sale contract (cf. *Converse* v. *Boston Safe Deposit & Trust Co.* 315 Mass. 544, 550), could have looked to the purchasers for payment of the premium. See *Pendleton* v. *Elliott,* 67 Mich. 496, 498; *Waring* v. *Loder,* 53 N. Y. 581, 582, 585. Cf. *Suffolk Fire Ins. Co.* v. *Boyden,* 9 Allen, 123, 126.

The result which we reach is consistent with the result in *Matter of Future Mfg. Coop. Inc.* 165 F. Supp. 111, 116 (N. D. Cal.). We do not rest our decision upon as broad and general grounds, but on the liability of the purchasers for the premium and the absence of any showing that the policy required subrogation of the insurer to Eastern's rights against the purchasers.

The order of the Appellate Division is reversed. The report is to be dismissed. Judgment is to be entered for the defendants upon the finding of the trial judge.

*So ordered.*